The STATE of Texas, Appellant,

v.

Dallas G. PERKINS et al., Appellees.

No. 3759.

Court of Civil Appeals of Texas.
Eastland.

Sept. 21, 1962.

Rehearing Denied Oct. 12, 1962.

Will Wilson, Atty. Gen., Austin, Eplen, Daniel, Hooper & Dickson, John W. Davidson, City Atty., Abilene, Senator Clint Small, Austin, for appellant.

Dan T. Sorrells, Abilene, Cofer & Cofer, Austin, for appellees.

GRISSOM, Chief Justice.

This suit was brought by the State of Texas, ex rel. J. C. McKee, Jr. et al., against Dallas G. Perkins, as mayor, and the other officials of Impact to test the validity of the incorporation of that city. Based upon the answers of a jury to special issues, the court rendered judgment against the State and it has appealed.

Appellant's first point is that the court erred in failing to render judgment for the State because the undisputed evidence and the jury's answer to issue number one conclusively show that at the time of its incorporation Impact was not a "town or village" within the meaning of the law. That, on the contrary, it was only a portion of a larger unincorporated, inhabited community, town or village which could not be lawfully incorporated without including substantially all of the town or village as it existed at the time of its purported incorporation.

Appellant alleged that appellees, as usurpers of public office, were illegally exercising the powers of officials of Impact because the 29 petitioners to incorporate the 47.43 acres known as Impact knew from the physical facts apparent on the ground that the area embraced within the boundaries of the proposed town contained only 70 houses, while in the territory immediately contiguous thereto and in the surrounding community as a whole there were many more residences, inhabitants and voters than in Impact. They alleged that appellees, in so fixing the boundaries, under the leadership of Mr. Perkins, acted with the fraudulent purpose of excluding the greater portion of said town or village and its qualified voters from participation in the incorporation election and prevented the inhabitants of the town as it then existed from having a voice in determining whether it should incorporate; that the law permitted incorporation by the voluntary act of the inhabitants of the town as it then existed, but not by the small portion thereof which said proponents chose to include, according to their whim and caprice, and, further, that the statutes gave to the qualified voters and inhabitants of the town as it then existed the right to fix the boundaries of the territory to be incorporated and to determine whether it should incorporate. They prayed for a judgment that the attempted incorporation was void.

The evidence conclusively shows that the election to incorporate was held February 13, 1960; that at said election 27 votes were cast for incorporation and none against; that Impact was declared incorporated on August 2nd and officials were elected on August 14th, with a maximum of 20 votes cast for any candidate; that there were only 70 houses in Impact, 15 of which were vacant, while within a triangle containing about 691 acres, of which the 47 plus acres was a part, outside of Impact there were 348 buildings, 301 of which were residences, with 17 vacancies, 5 churches and 25 businesses; that there

were then only 31 qualified voters inside Impact, according to the official poll list, and that, outside of Impact in said triangle there were 85 voters, exclusive of exemptions.

The evidence shows that Mr. Perkins' home is in the southwest corner of Impact and around his home there is vacant land that separates his home from most of the others in Impact; that it is 2200 feet from his home to the northeast corner of Impact; that Impact is about 1400 feet wide north and south; that it is a slightly greater distance from Impact's East boundary line to Grape Street in Abilene and less than 2700 feet from Impact's boundary line to Pine Street in Abilene; that Mr. Perkins purchased 19.7 acres of vacant land in July, 1959, took an option to buy 4 more acres in January 1960, and that all said acreage went into Impact and that either Mr. Perkins, or the corporation of which he and his wife are president and secretary, respectively, own over 29 of Impact's 47 plus acres and that, except for his home, said land is mainly vacant and unoccupied; that Mr. Perkins alone laid out the boundaries and no one else had anything to do with determining its boundaries; that the only people he talked to before circulating the petition to incorporate were those living close to him; that the reason he left out the 102 houses which join Impact on the north was that they intended to later give the inhabitants thereof an opportunity to decide for themselves whether they wanted to become a part of Impact. It is also undisputed that no natural barrier separates the remainder of the inhabited community from Impact.

The jury found in answer to issue one that "said proposed town was a portion of a territory comprising a larger, unincorporated, inhabited community or settlement." But, it also found that (2) the incorporation petitioners did not fix the boundaries "so as to arbitrarily exclude a portion of the larger unincorporated, inhabited community or settlement", of which

it was a part. (The court defined arbitrarily as follows: "The word 'arbitrarily' means unreasonably; not naturally; against the nature of things; at pleasure; without fair cause or reason; or depending on will alone.") It found that (3) the proposed town of Impact was conditioned so as to be subject to municipal government and that (4) the petitioners for incorporation intended to use the territory included in Impact for strictly town purposes.

Appellant urged in a motion for a directed verdict that the evidence conclusively showed that the proponents of incorporation did not incorporate a town within the meaning of the Constitution and laws of Texas and that Perkins arbitrarily fixed its boundary lines for the purpose of excluding most of the inhabitants of the community of which Impact was naturally a part. Said motion was overruled. After the verdict appellant filed a motion for judgment, asserting it was entitled to a judgment under the jury's answer to issue one and the undisputed facts. It also moved for judgment notwithstanding the answers to issues 2, 3 and 4, contending that the evidence conclusively showed that the boundaries were arbitrarily fixed by Perkins and not by the inhabitants of the town, as required by law. In appellant's motion for a new trial they particularly urged that the evidence conclusively showed that the corporate limits of Impact were not fixed in the reasonable exercise of the judgment of the voters of the town as it existed in February 1960, but, on the contrary, were adjusted to exclude land belonging to inhabitants of the town who might object to incorporation, and to prevent the inhabitants of the excluded portion from voting on said matter and having the benefits thereof.

After careful consideration of the entire record we are forced to the conclusion that the essential allegations of the information were conclusively established and that the law applicable thereto compels a judgment for appellant. Article 1133 authorizes a "town or village" that contains the population applicable here to incorporate in the manner therein prescribed. Article 1134 provides that "if the inhabitants of such town or village desire to be so incorporated" they may do so by following the procedure there prescribed. But, there is no provision for incorporation of a minor part of a town or village in the absence of natural barriers between parts of the town, and the like. None of such exceptions exist in this case. The inhabitants of the 47 plus acres called Impact had no inherent power to incorporate. A town or village can incorporate only by substantial compliance with the statutes. 30–A Tex.Jur. 29, 30.

The Supreme Court of Texas as early as 1890, in State ex rel. Taylor v. Eidson, 76 Tex. 302, 13 S.W. 263, 264, 7 L.R.A. 733, held that only towns and villages are authorized to incorporate; that "town" means a collection of inhabited houses and carries with it the idea of a considerable aggregation of people living in close proximity. (See also Ralls v. Parrish, 105 Tex. 253, 147 S.W. 564, 566.) In Ewing v. State, 81 Tex. 172, 16 S.W. 872, 873, 874, the Supreme Court asked the question, "Who are empowered to create the corporations?" It answered, "The inhabitants of cities, towns, and villages." It then asked, "What are they empowered to incorporate?" It answered, "The cities, towns, and villages themselves, and not also such portions of the adjacent territory as these inhabitants may be pleased to embrace within the limits of the corporation." It said that "the area occupied by a town * * * is so marked by the aggregation of residences and appurtenant structures that it is always practicable to fix the boundaries so as not to include any territory not authorized to be embraced. With a just disposition to respect the rights of the owners of adjacent property, no body of petitioners need make such a mistake as to this matter as will imperil the validity of the act of incorporation." The law is certainly the

same with respect to the exclusion of the major portion of a town or village as it is plainly marked by its residences and appurtenant structures. The inhabited houses of a town which proposes to incorporate may be seen on the ground. They show where the boundaries are. State ex rel. Taylor v. Eidson, 76 Tex. 302, 13 S.W. 263, 264, 7 L.R.A. 733. If the incorporating petitioners do not respect the rights of the inhabitants of a major portion of the town or village they imperil the validity of their acts in attempting to incorporate. Since such decisions our Legislature has consistently authorized towns and villages, not just an arbitrary slice thereof, to incorporate. In enacting the present statutes authorizing incorporation of towns and villages the Legislature adopted the previous definition of a town by the Supreme Court.

The jury found that Impact was a portion of a territory comprising a larger unincorporated, inhabited community or settlement. The record shows that at the time of the attempted incorporation Impact contained only 70 residences, 15 of which were vacant, while the remainder of the community, of which Impact was a part, contained 324 occupied residences, 25 business houses and 5 churches. It shows that more than 100 houses in a solid group were located just outside the arbitrarily fixed north boundary of Impact; the incorporators arbitrarily took a small slice from this solid group of inhabited houses and left the remainder outside its boundaries. The area thus attempted to be incorporated as a town contained no business of any kind, no church, no school, no pavement or any other public improvement. They were all in that part of the town, of which Impact was naturally a part, which was thus excluded; the boundaries were not fixed with any regard to the town as it was marked on the ground by the inhabited houses and appurtenant structures.

■ The principal question presented is whether the incorporators were required to include substantially the whole of the town as it actually existed at the time. The evidence conclusively shows that the boundaries were fixed according to the whim and caprice of Mr. Perkins; that he fixed the boundaries without regard to the town that actually existed, taking the small portion he desired and excluding the major portion. It shows that there were no natural barriers separating the chosen and rejected portions and that no fact exists which constituted a legal justification for such arbitrary division of the existing inhabited community.

In State ex rel. Wilke v. Stein, (Tex. Com.App.), 26 S.W.2d 182, 187 it was held, in an opinion approved by the Supreme Court, that "the statutes on this subject, as embraced in title 28, which is all the law applicable to this case, would not authorize the creation of a municipal corporation out of a portion of territory comprising an unincorporated town, but, on the contrary, the statute contemplates that, when a municipal corporation is sought to be created, under the circumstances alleged in the petition, the entire town, that is to say, substantially all the citizens residing within the limits of the inhabited portion of the settlement, or community, must be included." (See the same case in Tex.Com.App., 36 S.W.2d 698 and Tex. Civ.App., 52 S.W.2d 690.). The later opinions in that case do not hold contrary to the quoted statement of the law. In the second opinion of the Commission of Appeals, 36 S.W.2d 698, 699, it quotes the above statement of law from the first opinion and declares that the law is correctly stated there. The second opinion does qualify the first, so far as it is here material, only by saying that said holding would not be applicable if natural barriers, such as a river, separated portions of the town, and the like. The exceptions to the stated rule are not applicable here because the facts which create such exceptions do not exist in this case.

■■ This record compels the conclusion that the attempt to incorporate was without authority of law and contrary to

the public policy of the State. The attempted incorporation was not validated. The validating act "does not apply * * * where it was sought to incorporate in violation of the law." Judd v. State, 25 Tex. Civ.App. 418, 62 S.W. 543, 544 (Writ Ref.). Furthermore, to come within the validating act and make it applicable to Impact the requisite population must be shown by the Federal Census of 1960. It wasn't. See 13 U.S.C.A. § 145; Art. 23, Sec. 8, R.S.Texas. We also hold that the Attorney General was authorized to bring this suit. Art. 4, Sec. 22, Texas Constitution, Vernon's Ann.St.; Art. 4395; Staples v. State, 112 Tex. 61, 245 S.W. 639; Yett v. Cook, 115 Tex. 205, 281 S.W. 837; Art. 6253; City of West University Place v. State, Tex.Civ.App., 56 S.W.2d 1081 (Writ Ref.); 7 Tex.Jur.2d 14.

All points presented that have not been discussed have been considered and are overruled. We hold that the attempted incorporation is void. The judgment is reversed and judgment is rendered for the State of Texas.