**Dallas G. PERKINS et al., Petitioners,**

v.

**The STATE of Texas, Respondent.**

No. A–9284.

Supreme Court of Texas.

April 17, 1963.

Rehearing Denied May 15, 1963.

Cofer & Cofer, Austin, (Douglass D. Hearne, Austin, with above firm) and Dan Sorrells, Abilene, for petitioners.

Clint C. Small, Austin, and Tom K. Eplen, Abilene, for respondents Eplen, Daniel, Hooper & Dickson.

Waggoner Carr, Atty. Gen., Austin, for respondent State of Texas.

John W. Davidson and Les Cochran, Abilene, for respondent City of Abilene.

SMITH, Justice.

This is a quo warranto proceeding brought by the Attorney General in the name of the State of Texas to have de-

clared invalid the incorporation of an area in Taylor County designated as the town of Impact, Texas. The trial court has held that Impact was validly incorporated, and the Court of Civil Appeals has reversed and rendered the cause for the State. Tex.Civ.App., 360 S.W.2d 555.

We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court. We hold that even if the attempted incorporation of Impact in the first instance was void, the incorporation of the town has been validated by an act of the Legislature.

The qualified voters within the area known as Impact sought to incorporate under Article 1133 of Vernon's Annotated Civil Statutes which provides:

> "When a town or village contains more than two hundred (200) and less than ten thousand (10,000) inhabitants, it may be incorporated as a town or village in the manner prescribed in Chapter 11, Title 28, of the Revised Civil Statutes of Texas, 1925, and all amendments thereto."

The evidence establishes that the area sought to be incorporated comprises 47.43 acres bounded on the west by the meanders of a creek and by an existing fence line which abuts a farming area and on the east by an existing street. The remaining boundaries extend to, but do not include, a right-of-way owned by the West Texas Utility Company and a settlement serviced by utilities from the City of Abilene.

In February of 1960, a count was made of all the buildings in an area known as North Park, which includes Impact. At the time of the counting there were 70 houses, 15 of which were vacant, within the boundaries of Impact. In the area outside of Impact and contiguous thereto, are located 348 more buildings of which 301 are houses, 5 are churches, 25 contain businesses and 17 are vacant. None of the area of North Park outside of Impact is incor-

porated nor is it within the city limits of the City of Abilene.

It is undisputed that in February of 1960 there were more than 200 people living within Impact, and of this number only 31 were qualified voters. Within the North Park Area and outside of Impact reside some 85 qualified voters exclusive of exemption.

On February 1, 1960, 29 of the registered voters of Impact petitioned the County Judge of Taylor County to call an incorporation election. On that same date the County Judge found that all the requirements of Article 1133 et seq. of Vernon's Texas Civil Statutes had been complied with, and an election was set for February 13, 1960. The leader in the movement for the incorporation of Impact, Dallas G. Perkins, was appointed by the County Judge as the presiding judge of the election, notices were posted and all other statutory requirements regarding the incorporation election were complied with. On February 11, 1960, the County Judge entered an order revoking the order of February 1, 1960, and ordered that the election not be held. In the face of such order the incorporation election was held on February 13, 1960; twenty-seven votes were cast for incorporation and no votes were cast against. The returns of the election were presented to the County Judge, and he refused to take any of the steps necessary to put the election into effect. This court in Perkins v. Ingalsbe, 162 Tex. 456, 347 S.W.2d 926, caused a writ of mandamus to issue directing the County Judge to accept the returns, canvass the votes and to declare the results of the election.

On August 2, 1961, Impact was declared incorporated; and on August 14, 1961, Impact's officials were elected. By write-in votes, Dallas G. Perkins was unanimously elected mayor and his wife was elected secretary of Impact. Since the County Judge declared the results of the incorporation election Impact has functioned as an incorporated town. Elections have been held,

the City Council has met regularly, ordinances have been passed and complete records have been kept.

On September 1, 1961, the Attorney General, upon the relation of J. C. McKee et al. and the City of Abilene, and without the joinder of either the county attorney or the district attorney, filed this quo warranto proceeding to have declared invalid the incorporation of Impact. The case was tried before a jury and four special issues were submitted. In response thereto the following findings were made: (1) at the time the petition to incorporate the proposed town of Impact was presented to the County Judge, said proposed town was a portion of a territory comprising a larger unincorporated community or settlement; (2) that the petitioners for the election did not fix the limits and boundaries so as to arbitrarily exclude a portion of the larger unincorporated community of which the proposed town of Impact was a part; (3) the proposed town of Impact was conditioned so as to be subject to municipal government; and (4) the petitioners for the election did intend for the proposed town to be used strictly for town purposes. Based on these findings the trial court concluded that Impact was validly incorporated.

The Court of Civil Appeals, in reversing the judgment of the trial court, placed major emphasis on the jury's answer to Special Issue No. 1 in construing Article 1133, supra, and held that only whole towns and villages are authorized to be incorporated in the absence of natural barriers. The Court then held that the evidence conclusively shows that the proponents of incorporation did not incorporate a town, but only "an arbitrary slice" of a town. Thus, the Court concluded that the incorporation of Impact was invalid. The Court also held that Articles 966h and 974d–9, infra, have not validated the incorporation of Impact. This holding was based on the conclusion that the validating acts do not apply to towns whose incorporation has been in violation of law, and that Impact has been so incorporated. It was further held that the validating acts apply only to incorporated towns published in the last Federal census.

Because of the disposition we make of the case it is unnecessary for us to decide the propriety of the holding of the Court of Civil Appeals that the initial incorporation of Impact was invalid. Neither is it necessary for us to decide whether the Attorney General had a legal right to file and prosecute this suit without the joinder of the district attorney or the county attorney.

■ There is another matter that can have no material bearing on the question of whether or not the attempted incorporation has been validated. The record discloses that since the rendition of our judgment in Perkins v. Ingalsbe and the receipt and canvassing of the vote showing a majority in favor of incorporation of Impact, the qualified voters therein have authorized the sale of intoxicating liquors and have thus created an "oasis" on the boundary of a "dry" city in a "dry" county. This situation is highly displeasing and all but intolerable to a number of the individual respondents and, no doubt, to a large number of other citizens in the area. But whether the attempted incorporation of Impact should be validated was and is a legislative question, and whether intoxicating liquors shall be sold in Impact, if validated, was and is a political question. Through its local option provisions, Article 666, Vernon's Texas Penal Code, permits authorization of the sale of intoxicating liquors in incorporated towns in dry counties, Myers v. Martinez, Tex.Civ.App., 320 S.W.2d 862, writ refused, n. r. e., 160 Tex. 102, 326 S.W.2d 171, and the courts have neither the duty nor the right to deny effect to a validating act because it is displeasing to those living in surrounding dry areas that the inhabitants of a town have authorized the sale of intoxicants therein.

*The Validating Acts*

Perkins relies upon Articles 966h and 974d–9, Vernon's Annotated Civil Statutes, infra, to support his contention that the Legislature has properly exercised its power to validate and has validated any defects in the incorporation, boundary lines and governmental proceedings and acts of Impact. In our opinion Impact comes within the provisions of Article 966h, infra; and Article 974d–9, infra.

*Article 966h*

In 1961 the 57th Legislature passed House Bill No. 482[1] which is carried as Article 966h, Vernon's Annotated Civil Statutes. The act became effective on May 29, 1961, and validated any defects in the incorporation, the areas and boundary lines, and the governmental proceedings and acts of all cities and towns in Texas with a population of four thousand five hundred or less according to the last preceding Federal census. The statute provides in part:

> "Art. 966h. Cities and towns of 4,500 or less, validation of incorporation; areas and boundary lines; governmental proceedings and acts
>
> "Section 1. *All cities and towns* in Texas of *four thousand, five hundred (4,500) inhabitants or less, according to the last preceding Federal Census, heretofore incorporated or attempted to be incorporated under* any of the terms and provisions of *the General Laws of the State of Texas,* * * * *which are now functioning or attempting to function as incorporated cities or towns, are hereby in all respects validated* as of the date of such incorporation, or attempted incorporation; and *the incorporation of such cities and towns shall not be held invalid by reason of the fact that* the election proceedings or *other incorporation proceedings*

may not have been in accordance with law, or by reason of a failure to properly define the limits of such city or town.

> "Sec. 2. *The areas and boundary lines of all such cities and towns affected by this Act, including* * * * *the boundary lines covered by the original incorporation proceedings* * * * *are in all things validated* * * *."
>
> "Sec. 5. *The provisions of this Act shall not apply to any city or town now involved in litigation questioning the legality of the incorporation* * * * if such litigation is ultimately determined against the legality thereof."

On the effective date of the Act, Impact was involved in litigation (Perkins v. Ingalsbe, supra), but not such litigation as would exclude Impact from its coverage, for the Perkins case was not attacking the legality of the incorporation of Impact. The Perkins case was a mandamus proceeding seeking to compel the County Judge to declare the results of the incorporation election. Further, the Perkins case did not have the result of excluding Impact from the coverage of Article 966h since the litigation was not ultimately determined against the legality of Impact's incorporation.

At the outset it is necessary to dispose of the issues raised by the State's contention that the legislative power to cure the type of deficiency said to exist in the initial incorporation of Impact is constitutionally denied or prohibited by Sec. 4, Article XI of the Texas Constitution, Vernon's Ann.St. which provides:

> "*Cities* and *towns* having a population of five thousand or less may be chartered alone by general law. * * *"

It is argued that the Constitution empowers the Legislature to authorize only cities and

---

1. Ch. 275, p. 583, Reg.Session, 57th Leg., H.B. 482.

towns to incorporate, and not just parts thereof; and that since the jury has found that Impact was only a portion of a larger unincorporated community, the Legislature had no power to validate any defects in the incorporation of Impact. We disagree.

The accepted rule is that the Legislature has and may exercise all legislative power not denied or prohibited to it, expressly or by necessary implication, by the Constitution. Watts v. Mann, Tex.Civ.App., (1945), 187 S.W.2d 917, writ refused; State v. Brownson, 94 Tex. 436, 61 S.W. 114. Section 4, Article XI, does not expressly deny to the Legislature the power to authorize the incorporation of less than the whole of an unincorporated settlement as a town, and neither does it do so by necessary implication. The Legislature clearly has the power to validate any defects in the incorporation of Impact, its boundaries and its governmental proceedings and acts.

In considering the applicability of a validating act, this court must acknowledge the principle that even though an act of incorporation is void from its inception because of an unwarranted exercise of power or because of an entire absence of power, the Legislature may validate such act and make it live, for what the Legislature has the power to authorize, it has the power to ratify. State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065, 1078. Thus, the Legislature properly exercised its political power when it provided in Section 1 of Article 966h that the incorporation of towns to which the Act applies "shall not be held invalid by reason of the fact that the election proceedings or other incorporation proceedings may not have been in accordance with law, *or by reason of a failure to properly define the limits of such * * town.*" (Emphasis added), and provided in Section 2 that "The *areas and boundary lines of * * * towns affected by this Act, * * * are in all things validated * * *.*"

The State asserts that the attempted incorporation of Impact is invalid because those initiating the incorporation proceedings arbitrarily fixed the boundaries of Impact so as to carve out only a small part of a much larger unincorporated community. That type of deficiency, if it be one, is covered by both the general and specific provisions of the validating act. To say that the Legislature did not intend to validate incorporation proceedings because the *area* included within the proposed boundaries is less than the general settlement, or because the *limits* of the area incorporated are too narrowly drawn, is to ignore the very language of the Act which, being plain and clear, is the sole source from which intent may be derived. Simmons v. Arnim, 110 Tex. 309, 220 S.W. 66, 70; Gilmore v. Waples, 108 Tex. 167, 188 S.W. 1037, 1038.

Article 966h imposes three conditions precedent to validation: (1) there must have been *an attempt to incorporate* under the general laws of this state before the effective date of the Act, (2) there must have been *an attempt to function* as an incorporated town before the effective date of the Act; and (3) there must have been *a population of 4,500 or less according to the last preceding Federal census* on the effective date of the Act. In our opinion these three conditions have been met.

There has been no dispute that there has been an attempt to incorporate Impact as a town; rather, the State contends that Article 966h is not applicable to validate any defect in the incorporation of Impact since Impact was not actually functioning as an incorporated town on the effective date of the Act. This contention is untenable. The language of the Act does not limit its application to towns that have actually functioned as incorporated towns; it also applies to towns that have been *"attempting to function"* as incorporated towns. Impact could not actually function as a town until the county judge performed the statutory duties required of him by our decision in Perkins v. Ingalsbe, supra. The evidence established that Impact has been attempting to function as an incorporated

town since February 13, 1960, and the mandamus proceeding filed against the county judge is evidence of that attempt, for the prosecution of that suit was the first necessary step to actual functioning as a town. Thus, the second condition precedent to legislative validation under Article 966h has been established.

The third requirement of the Act is more difficult to dispose of. The State contends that Article 966h does not validate any defects in the incorporation of Impact since Perkins did not allege or prove that the population of Impact is shown in the list of all incorporated towns in the 1960 Federal census. It is argued that validating acts must apply to classes of towns to get around the prohibition against local and special laws found in Article III, § 56 of the Texas Constitution. It is the State's position that the phrase "according to the last preceding Federal Census" has been used in the Act so that the Legislature can know with certainty which towns are to have their incorporations validated. Therefore, it is the State's contention that this validating act does not apply to all towns with populations of four thousand five hundred or less, but only to those de facto corporations with the requisite populations as shown in the 1960 Federal census list of all incorporated towns in Texas.

■ Perkins contends that the Court of Civil Appeals has erred in holding that since Impact's population is not shown in the list of all incorporated towns in Texas, Article 966h does not apply. It is argued that if Impact's population must be shown to be 4,500 or less according to the last preceding Federal census, it need not be shown in the list of all incorporated towns in Texas; but rather all that need be shown is that the number of individuals living in Impact in 1960 and enumerated in the Federal census was 4,500 or less. However, Perkins contends that he need not establish that Impact's population was 4,500 or less

"according to the last preceding Federal census" since the State has not disputed that Impact's population is only a little over 200 inhabitants. Though we disagree with Perkins' last contention in this regard, in our opinion Impact's population is within the confines of Article 966h, and this fact may be established "according to the last preceding Federal Census."

■ The phrase "according to the last preceding Federal Census" cannot be ignored as Perkins contends, for it is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible. See: McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164, rehearing denied, 305 U.S. 676, 59 S.Ct. 356, 83 L.Ed. 437; Eddins-Walcher Butane Co. v. Calvert, 156 Tex. 587, 298 S.W.2d 93.

■ Webster defines "census" to mean "an official enumeration of the population of a country or of a city or other administrative district * * *." The phrase "according to the last preceding Federal Census" contained in Article 966h relates that Article to the United States Census immediately preceding the effective date of the act—May 29, 1961, which would include the 1960 decennial census or any intervening special census authorized under 13 U.S.C.A. § 8. See: Article 23, § 8, Vernon's Annotated Civil Statutes; See also: City of Bisbee v. Williams, 83 Ariz. 141, 317 P.2d 567.

■ The State contends that in seeking the legislative intent behind the inclusion of this phrase in Article 966h it is reasonable to suppose that it was adopted so that it could be definitely established, by reference to an official report, whether a particular town within the 4,500 or less classification had been validated,[2] and that the

2. In the case of City of Fort Worth v. Bobbitt, 121 Tex. 14, 36 S.W.2d 470, af-

firmed on rehearing 121 Tex. 14, 41 S.W. 2d 228, resort was made to the listing of

list of all incorporated towns in Texas in the 1960 decennial census fulfills this purpose since it was officially taken and the results thereof were officially announced. Even though this construction may be proper in the determination of the legislative intent behind the inclusion of the phrase under the rule that validating acts are to be liberally construed, the literal wording of the statute may be complied with by any showing that "according to the last preceding Federal Census" the population of Impact was less than 4,500.

■■■ Impact is not listed in the 1960 Federal census enumeration of all incorporated towns in Texas, and there has been no intervening special census of which we may take judicial notice, likewise, no field canvass has been made by the Bureau of the Census. A showing of the exact number of inhabitants living within Impact at the time the 1960 census was taken could have been made by a field canvass;[3] and the courts of this state could have taken judicial notice of the enumerations shown therein, for it is the rule in Texas that judicial notice may be taken of official pronouncements in regard to any Federal census. See: Ervin v. State (1931), 119 Tex. Cr.R. 204, 44 S.W.2d 380; Holcomb v. Spikes, Tex.Civ.App. (1921), 232 S.W. 891, wr. dism.; Smith v. Patterson, 111 Tex. 535, 242 S.W. 749; See also: McCormick & Ray, Texas Law of Evidence, 203; Wig-

more on Evidence, §§ 1671, 2580. Though there is no official pronouncement of the Bureau of the Census of which we may take judicial notice to determine the exact population of Impact, there are official pronouncements of the Bureau of Census from which it can be determined that the population of Impact was less than 4,500 in April of 1960, when the last Federal census was taken.[4]

Table 8 of the Bureau of Census published report entitled *United States Census of Population: 1960, Number of Inhabitants, Texas,* lists the population of all incorporated places in Texas and the population of all unincorporated places having a population of 1,000 or more which are *outside the urbanized areas* of towns in Texas which have a population of 50,000 or more. Table 10 of the above mentioned census report lists the population *within the urbanized areas* of Texas. Table 8 and Table 10 combined show the population of all incorporated places and all unincorporated places with a population of 1,000 or more in Texas.

The enumeration of the population of the urbanized area of Abilene is shown in Table 10, and from this table we judicially know that there is no unincorporated community outside the city limits but within the urbanized area of Abilene with a population of more than 4,500.[5] Since the population of Impact is not shown in Table 8, we

towns in Texas in the 1920 Federal Census in order to determine what cities or towns were embraced within the terms of the statute in question.

3. The decennial census does not just include enumerations of figures. It also is composed of the addresses and names of the individuals who have been counted. In a field canvass, the addresses within the area the population of which is to be determined are found, and a count is made of the individuals who were living at those addresses. This count would be officially certified by the proper department of the Federal government as the 1960 population of the area.

4. 13 U.S.C.A. § 145(a). "The census of the population * * * and of housing * * * shall be taken as of the 1st day of April, and each enumerator shall commence the enumeration of his district on the day following * * * each enumerator shall prepare the returns * * * required to be made and forward the same to the supervisor of his district within thirty days from the commencement of the enumeration * * *."

5. The total population of the urbanized area of Abilene is 91,566 persons. Of this number 90,368 persons reside within the city limits of Abilene. The remaining 1,198 persons reside outside the city limits of Abilene, but within the urbanized area of Abilene.

judicially know that if Impact is outside the urbanized area of Abilene it did not have a population of 1,000 or more. Thus, by taking judicial notice of Table 8 and Table 10 of the published census report of the population of Texas we judicially know that Impact had fewer than 4,500 inhabitants according to the last preceding Federal census. Once this determination is made, then the third and final condition precedent to legislative validation under Article 966h is met.

### Article 974d–9

Subsequent to the passage of Article 966h, supra, Senate Bill No. 59 [6] was passed. This act, carried as Article 974d–9, Vernon's Annotated Civil Statutes, became effective on August 26, 1961, twenty-four days after Impact was declared incorporated, and at a date when Impact was involved in no litigation. This act had for its purpose the validation of the incorporation and boundary lines of all cities and towns containing not more than six thousand (6,000) in population according to the Federal census of 1960. The pertinent provisions of this statute provide:

"Art. 974d—9. Cities and towns of not more than 6,000; validation of incorporation; boundary lines; governmental proceedings; adoption of home rule charter

"Section 1. *The incorporation proceedings of all cities and towns in this state heretofore incorporated or attempted to be incorporated under the General Laws of Texas, and having a population according to the Federal Census of 1960 of not more than six thousand (6,-000), \* \* \* and which have functioned as incorporated cities and towns since the date of such incorporation or attempted incorporation, are hereby in all respects validated as of the date of such incorporation or attempted incorpo-*

*ration; and the incorporation of such cities and towns shall not be held invalid by reason of the fact that the election proceedings or other incorporation proceedings may have not been in accordance with law.*

"Sec. 2. The boundary lines of all such cities and towns covered by the original incorporation proceedings are hereby in all things validated."

Article 974d–9, like Article 966h, contains three prerequisites for legislative validation: (1) *an incorporation* or an attempt to incorporate; (2) *a functioning as an incorporated town since the date of such incorporation* or attempted incorporation; and (3) *a population of not more than six thousand* (6,000) according to the Federal census of 1960.

The State contends that Article 974d–9 does not apply to Impact since it validates only those towns shown in the 1960 Federal census which have functioned as incorporated towns since the date of their attempted incorporation, and that Impact has not so functioned. We disagree with this contention. The evidence does establish that for a period of some 18 months, between February 13, 1960, and August 2, 1961, Impact lay dormant. However, Article 974d–9 does not apply only to towns that have functioned as incorporated towns since the date of their attempted incorporation, but it also applies to towns which have functioned as incorporated towns since the date of their incorporation. Impact was declared incorporated on August 2, 1961, and since that date Impact has functioned as an incorporated town. Thus, two prerequisites for legislative validation under Article 974d–9—incorporation, and a functioning as an incorporated town since the date of incorporation—have been met.

The third requirement of Article 974d–9 necessitating a showing that on the effective

6. Ch. 40, p. 153, 57th Leg., 1st C.Sess., S.B. 59.

date of the Act Impact had a population of not more than six thousand according to the Federal census of 1960 is disposed of by the discussion of the similar requirement in Article 966h. Therefore, Impact also falls within the coverage of Article 974d–9.

In our opinion if there were any defects in the incorporation, boundary lines, area, or governmental proceedings and acts of Impact, Texas, such defects have been validated by Article 966h and Article 974d–9.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

CALVERT, C. J., concurs in the result.

WALKER and STEAKLEY, JJ., dissenting.

WALKER, Justice (dissenting).

For the sake of brevity and since the Court does not hold otherwise, I begin with the premise that the original incorporation proceedings were invalid for the reasons pointed out by the Court of Civil Appeals in its opinion. Tex.Civ.App., 360 S.W.2d 555. The only question then is whether the attempted incorporation was validated by either Article 966h or Article 974d–9, Vernon's Ann.Tex.Civ.Stat. The Court evidently regards each of these statutes as a rather weak crutch, because it is unwilling to venture forth without the aid of both.

Article 966h, which became effective on May 29, 1961, applies only to cities and towns "which are now functioning or attempting to function as incorporated cities or towns." On May 29, 1961, the incorporation election had been held and Dallas G. Perkins was prosecuting his action for mandamus to require the County Judge to accept the returns, canvass the votes and declare the results of the election. This was an effort by an individual to complete the election process so that it could be determined whether Impact was incorporated to the end that it might begin functioning as a municipality. It did not constitute an attempt by the town to function as such, and there is no evidence that Impact was functioning or attempting to function as an incorporated town at the time Article 966h became effective. By the very terms of the statute, it has no application to Impact.

A comparison of Articles 966h and 974d–9 leads me to the conclusion that the Legislature intended by the latter statute only to validate technical defects in the incorporation of cities and towns where there has been an effort in good faith to comply with the general law. Article 966h declares the legislative intent to validate "all cities and towns in Texas" which satisfy the other requirements of the statute. It then states in no uncertain terms that the areas of such cities and towns are in all things validated, and that their incorporation shall not be held invalid because of the inclusion of more territory than is expressly authorized by Article 971, Tex.Rev.Civ.Stat.1925. This shows rather clearly the manner in which the Legislature expresses its intention to deal with the territorial problem we have in the present case. On the other hand, Article 974d–9 purports to validate "the incorporation proceedings" of cities and towns which meet the conditions there laid down, and states that their incorporation shall not be held invalid by reason of the fact that the election proceedings or other incorporation proceedings may not have been in accordance with law. The boundary lines covered by such proceedings are expressly validated, but no mention is made of area or of an effort to include more or less territory than is authorized by general law. It also appears from the emergency clause that the Legislature was concerned with "technical oversights in the incorporation of cities and towns affected by this Act." In my opinion the lawmakers did not intend thereby to give legal vitality to an attempted incorporation which is invalid by reason of the arbitrary exclusion of a major part of the town or village.

There is yet another reason why neither of the validating statutes has any application in this case. The Legislature has there declared its purpose to validate "[a]ll cities and towns in Texas of four thousand, five hundred (4,500) inhabitants or less, according to the last preceding Federal Census," and the "incorporation proceedings of all cities and towns in this state heretofore incorporated or attempted to be incorporated under the General Laws of Texas, and having a population according to the Federal Census of 1960 of not more than six thousand (6,000)." Petitioners would have us disregard the references to the Federal Census on the ground that a validating act must be liberally construed to effectuate the purpose of its enactment. The Court properly rejects this argument, because the rule of liberal construction does not justify our giving the statutes an affect not intended by the Legislature. No attempt has been made to validate cities and towns which have a certain population in fact. The lawmakers stated clearly and explicitly that they were validating only those having the requisite population according to the applicable Federal Census.

In this context "according to" means "as attested or declared by." Webster's New International Dictionary, 2nd ed. 1941. The references to the Federal Census are simply another way of saying that the Legislature wished to validate only those cities and towns that are affirmatively shown by the official compilations of the Bureau of the Census to be within the established classifications. It would also be well to observe at this point that while the burden was on respondent to show the invalidity of the original incorporation proceedings, petitioners have alleged the validating acts as a defense to the action. In my opinion it was their burden to bring themselves within the terms of the statutes. If the application of the validating acts turns upon any unresolved issue of fact, petitioners have waived the defense by failing to obtain or request a jury finding. Rule 279, Texas Rules of Civil Procedure.

There is no testimony showing the number of people which the census enumerators found to be residing in the area embraced by the purported corporate limits of Impact. The record does not contain a special compilation of the Census figures applicable to that territory although the Federal statute apparently authorizes the Secretary of Commerce to furnish such information upon request. 13 U.S.C.A. § 8. We have only the official report of the 1960 Federal Census for the State of Texas, hereinafter referred to as the census report, a copy of which is attached to one of respondent's briefs.

The Court says, in effect, that the information found in Tables 8 and 10 of the census report shows conclusively and as a matter of law that the population of Impact according to the 1960 Federal Census was not more than 4,500. I am unable to agree with this conclusion. Table 8 is a list in alphabetical order of all places in Texas which the census officials regarded as incorporated, and of certain unincorporated places containing more than 1,000 inhabitants, with the population of each according to the 1960 Federal Census. The listed cities and towns range in population from Belcherville and La Isla, each with 35 inhabitants, to Houston with its population of 938,219. With reference to the unincorporated communities, the introduction to the census report discloses that "the Bureau has delineated boundaries for densely settled population centers without corporate limits." Neither Impact nor North Park is mentioned in Table 8, and the census report does not purport to show the population of either according to the 1960 Federal Census.

Table 10 is a compilation of the population figures for certain urbanized areas. The Abilene Urbanized Area is included in such list, but there is nothing in the census report to identify the boundaries of that Area except a map found on page 46. This map, which contains no metes or bounds and does not purport to show either Impact or North Park, is approximately 5 inches by

3¼ inches in size. The area which the census officials thought was bounded by the corporate limits of Abilene is indicated by hatched lines. North of and adjoining the hatched area is a small dotted area which on the map is approximately ¼ inch by ⁷⁄₁₆ inch in size. According to the legend accompanying the map, the latter was regarded by the census officials as an unincorporated area. One of the exhibits introduced in evidence is a large map of the territory generally known as North Park. The dotted area on the census map appears to have the same general contours as the area identified on the large map as North Park. While this might be sufficient to raise an issue of fact, it certainly does not establish as a matter of law that the inhabitants of Impact or North Park were included by the census authorities in their compilation for the Abilene Urbanized Area or were not included in the figures for the City of Abilene.

The Court assumes that the people residing in Impact were not included in the population figures for Abilene. It then assumes that Impact must lie wholly within or wholly without the Abilene Urbanized Area. On the basis of these assumptions, the Court reasons: (1) If Impact lies wholly within the Abilene Urbanized Area, it can be shown to fall within the statutory classifications by subtracting the population figures for Abilene from those for the Abilene Urbanized Area; and (2) If Impact lies wholly without the Abilene Urbanized Area, the community is shown to have less than 1,000 inhabitants according to the 1960 Federal Census by the fact that it is not mentioned in Table 8. What is the basis for reaching these conclusions as a matter of law? The record contains no information which shows definitely where the census authorities located the city limits of Abilene or the boundaries of the Abilene Urbanized Area on the ground. The mere fact that an area which someone has sought to incorporate is not mentioned in Table 8 does not conclusively establish that the census enumerators found less than 1,000 people residing there. Its absence from the list might be due to the fact that the responsible census authorities did not regard it as a "densely settled population center." The Court apparently is saying that in view of the information found in the record with reference to the number of acres covered by Impact and North Park, one or the other would probably have been regarded by the census officials as a "densely settled population center without corporate limits" and thus would probably have been included by them in Table 8 if it contained more than 1,000 inhabitants. And yet the criteria by which such officials determined whether a given area was a "densely settled population center" are not disclosed by the census report or by the record in this case.

It might be proper for the trier of fact to resort to this process of reasoning, but petitioners have not obtained jury findings or requested issues to establish the facts on which the majority holding is based. The inferences drawn by the Court from the facts proven and the information contained in the census report appear to be reasonable, but it seems rather strange for a court of law to indulge in assumptions and inferences whose soundness has not been established as a matter of law. Entirely aside from this problem, however, the mere fact that the Court must resort to assumptions, probabilities, and inferences demonstrates rather convincingly that the 1960 Federal census figures at our disposal do not affirmatively declare and attest that the census enumerators found not more than 4,500 and not more than 6,000 people residing in Impact.

I would affirm the judgment of the Court of Civil Appeals.

STEAKLEY, J., joins in this dissent.