The STATE of Texas, Appellant,

v.

Patrick Scott KINGSBURY, Appellee.

The State of Texas, Appellant,

v.

Inocente Morales Dominguez, Appellee.

Nos. 13–02–475–CR, 13–02–476–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Feb. 19, 2004.

Dissenting Opinion March 15, 2004.

Yolanda De Leon, Terra Bay, Dist. Atty's Office, Brownsville, for appellant.

Carlos Hermenegildo Cisneros, Brownsville, for appellee Patrick Scott Kingsbury.

Armando R. Villalobos, Brownsville, for appellee Inocente Morales Dominguez.

Before Justices RODRIGUEZ, CASTILLO, and WITTIG.[1]

## OPINION

Opinion by Justice RODRIGUEZ.

This is a cruelty to animals case. Pursuant to section 42.09 of the Texas Penal Code, appellant, the State of Texas, filed a criminal action against appellees, Patrick Scott Kingsbury and Inocente Morales Dominguez. *See* TEX. PEN.CODE ANN. § 42.09 (Vernon 2003). The State alleged appellees tortured four dogs by leaving them without food and water, which led to their deaths. The trial court found it lacked jurisdiction because the indictment alleged only a misdemeanor. *See* TEX. CODE CRIM. PROC. ANN. art. 4.05 (Vernon 1977).[2] By one issue, the State contends the district court committed reversible error in granting appellees' motion to dismiss for lack of jurisdiction. We affirm.

## I. BACKGROUND

Kingsbury purchased a number of dogs for the purpose of breeding and selling. He hired Dominguez to care for the dogs. Some time later, after an anonymous tip, Cameron County Animal Control workers located approximately seventy-six of the dogs purchased by Kingsbury; all were emaciated and dehydrated. The workers also found the remains of several other dogs that had died of starvation. Both Kingsbury and Dominguez were arrested and indicted for cruelty to animals. TEX. PEN.CODE ANN. § 42.09 (Vernon 2003). The indictment alleged that appellees intentionally or knowingly tortured four dogs by "leaving them without food and water to such an extent as to cause the death of said dogs." Appellees filed a motion to quash the indictment and a motion to dismiss for lack of jurisdiction. The basis of appellees' motions was that the indictment alleged felony torture but used, as the defining element, language from the misdemeanor offense of failing to provide necessary food, care, or shelter. The district court agreed and held that since the language in the indictment closely tracked the language of the misdemeanor offense, the indictment alleged a misdemeanor under the guise of a felony. Thus, the district court concluded it lacked jurisdiction.

## II. STANDARD OF REVIEW

■ This is an issue of first impression in Texas that presents a question of statutory interpretation. Matters of statutory construction are questions of law for the courts to decide. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex. 1989). As such, they are subject to de novo review. *State Dept. of Hwys. & Pub. Transp. v. Payne,* 838 S.W.2d 235, 238–39 (Tex.1992). "In construing a statute, our primary objective is to determine and give effect to the Legislature's intent." *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). Our starting point is to look to the plain and common meaning of the statute's words, viewing its terms in

---

1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp.2004).

2. Article 4.05 states that district courts have original jurisdiction in criminal cases of the grade of felony, of all misdemeanors involving official misconduct, and of misdemeanor cases transferred to the district court under article 4.17. TEX.CODE CRIM. PROC. ANN art. 4.05 (Vernon 1977).

context and giving them full effect. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998). If the language is unambiguous, we will interpret the statute according to its plain meaning. *State ex rel. State Dep't of Hwys. & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002). We are mindful that "every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *Perkins v. State,* 367 S.W.2d 140, 146 (Tex.1963). The statute should be considered in its entirety when determining the meaning of its component parts. *See Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 133 (Tex.1994). We should also presume the Legislature intended a "result feasible of execution" when it enacted the statute. *In re Mo. Pac. R.R. Co.,* 998 S.W.2d 212, 216 (Tex.1999). Other matters that may be considered in ascertaining the Legislature's intent include the objective of the law and the consequences of a particular construction. *See* Tex. Gov't Code Ann. § 311.023 (Vernon 1998); *McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003). With these principles in mind, we turn to the statutory language to be construed.

## III. ANALYSIS

The language at issue from section 42.09 of the Texas Penal Code, Cruelty to Animals, reads in relevant part:

 (a) A person commits an offense if the person intentionally or knowingly:

 (1) tortures an animal;

 (2) fails unreasonably to provide necessary food, care, or shelter for an animal in the person's custody;

 (3) abandons unreasonably an animal in the person's custody;

 (4) transports or confines an animal in a cruel manner;

 (5) kills, seriously injures, or administers poison to an animal, other than cattle, horses, sheep, swine, or goats, belonging to another without legal authority or the owner's effective consent;

 (6) causes one animal to fight with another;

 (7) uses a live animal as a lure in dog race training or in dog coursing on a racetrack;

 (8) trips a horse;

 (9) injures an animal, other than cattle, horses, sheep, swine, or goats, belonging to another without legal authority or the owner's effective consent; or

 (10) seriously overworks an animal.

 * * *

 (d) An offense under Subsection (a)(2), (3), (4), (9), or (10) is a Class A misdemeanor, except that the offense is a state jail felony if the person has previously been convicted two times under this section.

 * * *

 (g) An offense under Subsection (a)(1), (5), (6), (7), or (8) is a state jail felony, except that the offense is a felony of the third degree if the person has previously been convicted two times under this section....

Tex. Pen.Code Ann. § 42.09 (Vernon 2003).

The State contends the term "torture" includes a failure to provide necessary food and water and, therefore, the indictment properly alleges a felony under subsection (a)(1). In support of its argument, the State relies on *Martinez v. State,* 498 S.W.2d 938 (Tex.Crim.App.1973); *Johnson v. State,* 465 S.W.2d 372 (Tex.Crim.App. 1971); and *State v. Woodward,* 68 W.Va. 66, 69 S.E. 385 (1910), cases addressing

torture of humans. The State also argues that a former statutory definition of torture provides guidance. *See* Act of March 31, 1913, 33rd Leg., R.S., ch. 88, 1913 Tex. Gen. Laws 168, 170 *repealed by* Act of May 16, 1989, 71st Leg., R.S., ch. 678, § 13, 1989 Tex. Gen. Laws 2230, 3165 (defining torture of an animal as every act, omission, or neglect whereby unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue when there is a reasonable remedy or relief). This Court does not find either argument persuasive.

### A. The Plain Meaning and Structure of the Statute

■■■ We start with the plain and common meaning of the statutory words. *Garrison Contractors, Inc.*, 966 S.W.2d at 484. This Court, in construing a statute, must give effect to each sentence, clause, and word. *See Perkins*, 367 S.W.2d at 146. We will not give an undefined statutory term a meaning that is out of harmony or inconsistent with other provisions in the statute. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002).

■■■ When the law regarding cruelty to animals was codified in 1974, the Legislature omitted the definition of torture. *See* Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 885. The term remains undefined in the present statute. TEX. PEN.CODE ANN. § 42.09 (Vernon 2003). It is evident, however, by a reading of section 42.09, that "torture" is not meant to include failing to provide necessary food, care, or shelter. The criminal acts of torture and failing to provide necessary food, care, or shelter are assigned separate subsections, (a)(1) and (a)(2) respectively, and are followed by eight other offenses. TEX. PEN.CODE ANN. § 42.09 (Vernon 2003). When we give effect to each subsection, it is obvious that subsections (a)(1) and (a)(2) each constitute

an independent criminal act. A person commits animal cruelty by intentionally or knowingly torturing an animal "or" by intentionally or knowingly failing unreasonably to provide necessary food, care, or shelter. TEX. PEN.CODE ANN. § 42.09(a)(1) & (2) (Vernon 2003). The plain language of the statute indicates that a person can commit one criminal act "or" the other. The two acts are not dependent on each other, nor do they bear any relation to one another. Because the two criminal acts are read separately from each other, it would be incongruous to interpret "torture" as encompassing a failure to provide necessary food, care, or shelter. While we are not attempting to define what torture is, we are establishing, under the facts of this case, what it is not. By finding that torture does not include any of the criminal acts set out in subsections (a)(2) through (a)(10), we enable the term to have a meaning which is in harmony and consistent with the other provisions of the statute. *See Needham*, 82 S.W.3d at 318.

In determining the relationship between subsections (a)(1) and (a)(2), we also look at the statute as a whole. *See Glyn–Jones*, 878 S.W.2d at 133. Section 42.09, when read in its entirety, provides that a person may commit animal cruelty, punishable as a felony, by torturing an animal. *See* TEX. PEN.CODE ANN. § 42.09(a)(1) & (g) (Vernon 2003). The statute also states that a person may commit animal cruelty, punishable as a class A misdemeanor, by failing to provide necessary food, care, or shelter for an animal. *See id.* § 42.09(a)(2) & (d). The lesser punishment attached to the latter criminal act further supports our conclusion that the two offenses are distinct. The language of the entire statute indicates the Legislature meant to clearly categorize those particular offenses it felt warranted an increased penalty and those that did not. In doing this, it left the

crime of failing to provide necessary food, care, or shelter for an animal as a misdemeanor. *See id.* This criminal act is not punished as severely as torture. Therefore, we conclude that failing to provide an animal with necessary food, care, or shelter is not torture as that term is used in section 42.09(a)(1). TEX. PEN.CODE ANN. § 42.09 (Vernon 2003)

### B. Consequences of Overbroad Interpretation

 Interpreting section 42.09 as the State urges would undermine the statute's purpose. Allowing the felony offense of torture to include the misdemeanor offense of failing to provide necessary food, care, or shelter would have the effect of enabling the State to bring a felony charge of torture for any of the criminal acts listed under subsection 42.09(a). *See* TEX. PEN. CODE ANN. § 42.09 (Vernon 2003). For example, unreasonably abandoning an animal could also be considered "torture," as could seriously overworking an animal. The State would ultimately be able to circumvent the express language of subsection (d). *See id.* § 42.09(d). Instead of five misdemeanor criminal acts and five felony acts, there would in effect be ten acts capable of carrying a felony punishment. This result defeats the statute's categorization of "torture" as a more serious crime. This Court is not willing to interpret the statute in this manner.

### IV. CONCLUSION

Accordingly, we find the criminal act of failing to provide necessary food, care, or shelter for an animal does not constitute the felony offense of torture. The two criminal acts are separate and distinct from one another. Therefore, the indictment, by alleging torture by failing to provide food and water, did not sufficiently allege a felony under section 42.09(a)(1). Instead, the indictment charged appellees with a misdemeanor under section 42.09(a)(2). TEX. PEN.CODE ANN. § 42.09 (Vernon 2003). We conclude the district court lacked jurisdiction. *See* TEX.CODE CRIM. PROC. ANN. art. 4.05 (Vernon 1977).[3] We affirm the judgments of the trial court.

Separate Opinion by Justice CASTILLO.

Dissenting by Justice CASTILLO.

Respectfully, I dissent. The majority approaches this appeal as a case of statutory interpretation. I would interpret the indictment instead. This case presents only the question of whether the indictment alleges a felony under the animal-cruelty statute so as to invoke district court jurisdiction. I would conclude that it does. I would reverse and remand.

### I. THE INDICTMENT

I would begin my analysis with the indictment itself, not with the animal-cruelty statute:

**INOCENTE MORALES DOMINGUEZ AND PATRICK SCOTT KINGSBURY,** hereinafter called the Defendants, on or about the **29th** day of **JANUARY, 2002,** ... did then and there intentionally or knowingly **torture** one white and brown haired dog, one white and black haired dog, and two white haired dogs by **leaving them without food and water to such an extent as to cause the death of said dogs,** and the defendant's conduct was not a generally accepted and otherwise lawful use of an animal solely for the purpose of fishing, hunting, or trapping; or wildlife control as regulated by state

---

**3.** The record does not show this case was transferred pursuant to article 4.17 of the code of criminal procedure. TEX.CODE CRIM. PROC. ANN. art. 4.17 (Vernon 1977).

and federal law; or animal husbandry or farming practice involving livestock.

In general, an indictment must plead any element that must be proved at trial. TEX.CODE CRIM. PROC. ANN. art. 21.03 (Vernon 1989); *Harrison v. State,* 76 S.W.3d 537, 539 (Tex.App.-Corpus Christi 2002, no pet.) (citing *Green v. State,* 951 S.W.2d 3, 4 (Tex.Crim.App.1997)). An indictment also must provide adequate notice of the charges the accused must prepare to meet and enable the accused to plead acquittal or conviction in bar to future prosecution for the same offense. TEX.CODE CRIM. PROC. ANN. art. 21.11 (Vernon 1989); *Harrison,* 76 S.W.3d at 539 (citing *Sanchez v. State,* 928 S.W.2d 255, 259 (Tex.App.-Houston [14th Dist.] 1996, no pet.)).

When construing an indictment, this Court reads the indictment as a whole, applying practical rather than technical considerations. *Harrison,* 76 S.W.3d at 539 (citing *Oliver v. State,* 692 S.W.2d 712, 714 (Tex.Crim.App.1985); *Soto v. State,* 623 S.W.2d 938, 939 (Tex.Crim.App. [Panel Op.] 1981)). Keeping this injunction in mind, I then would examine the animal-cruelty statute to determine the sufficiency of the allegations in the indictment.

## II. THE STATUTORY ELEMENTS OF THE OFFENSE

The applicable provisions of the animal-cruelty statute are:

### § 42.09 Cruelty to Animals

(a) A person commits an offense if the person intentionally or knowingly:

(1) tortures an animal;

(2) fails unreasonably to provide necessary food, care, or shelter for an animal in the person's custody.

TEX. PEN.CODE ANN. § 42.09(a)(1),(2) (Vernon 2003). A charging instrument that alleges only "torture" as its description of the criminal act without specifying the manner and means of its commission fails to provide adequate notice of the offense charged because of the diverse number of acts encompassed by the word "torture." *Haecker v. State,* 571 S.W.2d 920, 922 (Tex.Crim.App. [Panel Op.] 1978). On the other hand, a charging instrument that alleges the accused "fail[ed] unreasonably to provide necessary food, care, or shelter for an animal in the person's custody" gives fair notice of the offense charged. *See Cross v. State,* 646 S.W.2d 514, 516 (Tex.App.-Dallas1982, writ ref'd) ("Torture of an animal may be done by various means, so that the specific means to be proved must be alleged, whereas an allegation of failure to provide necessary food can only mean failure to provide food of sufficient quantity and quality to sustain the animal.").

On comparison of the indictment in this case with the animal-cruelty statute, I conclude that it does not allege both the felony offense of "torture" of the dogs and the misdemeanor offense of "fail[ure] unreasonably to provide necessary food, care, or shelter for an animal in the person's custody." The indictment includes the deprivation of water as an allegation and lacks the words "unreasonably" and "necessary." It also omits the element that the dogs were in appellants' custody, a necessary allegation under the failure-to-provide offense defined by section 42.09(a)(2) but not as an element of torture under section 42.09(a)(1). *See* TEX. PEN.CODE ANN. § 42.09(a)(1),(2) (Vernon 2003). The indictment does not adequately allege the misdemeanor and is fundamentally defective in that regard. *See Cross,* 646 S.W.2d at 516; *see also Oliver,* 692 S.W.2d at 714; *Soto,* 623 S.W.2d at 939 (indictment that omits element fails to allege offense).

Rather than charging appellants with the misdemeanor, the indictment alleges "leaving [the described dogs] without food

and water to such an extent as to cause the death of said dogs" as the manner and means of committing the offense of torturing the animals. Contrary to the majority's holding, nothing prohibits the State from alleging conduct that could be prosecuted as an offense under one provision of the animal-cruelty statute as the manner and means of commission of a separate provision. *Mills v. State*, 802 S.W.2d 400, 404 (Tex.App.-Houston [1st Dist.] 1991, writ ref'd) (interpreting charging instrument under predecessor animal-cruelty statute).

The majority reaches the conclusion it does by emphasizing some words in the indictment and ignoring the jurisdictional effect of the State's use of the word "torture," rather than reading the indictment as a whole. *See Harrison*, 76 S.W.3d at 539. The *Mills* court analyzed a charging instrument that alleged the accused intentionally and knowingly confined an animal in a cruel manner "by failing to provide necessary food and care resulting in the animal's death while the animal was in [her] custody." *Mills*, 802 S.W.2d at 404. The offense of "confin[ing] an animal in a cruel manner" is a distinct provision of the animal-cruelty statute. *See* Tex. Pen.Code Ann. § 42.09(a)(4) (Vernon 2003). Reading the charging instrument as a whole, the *Mills* court rejected the appellant's argument that the charging instrument alleged an offense under two different parts of the statute, and she could not determine which one she was accused of violating. *Mills*, 802 S.W.2d at 404. The court of appeals concluded that the charging instrument alleged an offense under the predecessor to section 42.09(a)(4), not section 42.09(a)(2). *Id.*

Similarly, I would read the indictment in each case as a whole, without emphasizing any one allegation over another, and apply the practical consideration that the State must allege the manner and means of committing the offense of torture of an animal. *See Harrison*, 76 S.W.3d at 539. I would hold that the indictment alleged the felony offense of torture with sufficient specificity to confer felony district court jurisdiction. To hold otherwise requires the conclusion that an animal that is starved and dehydrated to death was not tortured for days before it finally succumbed to starvation and thirst. Such an overly technical interpretation of the statute hampers the State's prosecution of felony animal-cruelty cases, a result the Legislature could not have intended.

### III. REMEDY

Respectfully, I further dissent to the precedent the majority sets regarding the remedy for lack of jurisdiction in the district court in a criminal proceeding involving a purely misdemeanor offense. The majority affirms the dismissal of the indictments. If the district court did not have jurisdiction, it was required to transfer each case, not dismiss the indictments. Tex.Code Crim. Proc. Ann. art. 21.26 (Vernon 2003). On the filing of an indictment in the district court that charges an offense over which the court has no jurisdiction, the judge of the district court shall order transfer of the case to an inferior court that does have jurisdiction. *Id.* Any case so transferred shall be entered on the docket of the court to which it is transferred. Tex.Code Crim. Proc. Ann. art. 21.29 (Vernon 2003). The case is then tried as if it had originated in the court to which it was transferred. *Id.* Thus, the proper remedy was to transfer the cases, not dismiss them.