

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

March 13, 2003

Mr. Albert Hawkins
Commissioner
Texas Health and Human Services Commission
P.O. Box 13247
Austin, Texas 78711

Opinion No. GA-0033

Re: Whether the Texas Community Health Center Revolving Loan Fund exists as a trust fund outside the state treasury; whether loan income is the property of the Fund; and whether chapter 136 of the Human Resources Code, which establishes the Fund, violates article III, sections 1, 50 and 51 of the Texas Constitution (RQ-0602-JC)

Dear Commissioner Hawkins:

Chapter 136 of the Human Resources Code, as enacted by the Seventy-seventh Texas Legislature in House Bill 2574, establishes the Texas Community Health Center Revolving Loan Fund ("the Fund"). Your predecessor in office asked about the status of the Fund in light of House Bill 3088, a bill enacted later in the same session that abolished certain funds, and about the ownership of chapter 136 loan income and the constitutionality of chapter 136.[1]

## I.     Human Resources Code, Chapter 136

Chapter 136 creates the Fund as "a trust fund outside the state treasury held by a financial institution" and administered by the Health and Human Services Commission ("the Commission") "as trustee on behalf of community health centers in this state." TEX. HUM. RES. CODE ANN. § 136.003(a) (Vernon Supp. 2003). Section 136.003 provides that the Fund is composed of:

(1) money appropriated to the fund by the legislature;

(2) gifts or grants received from public or private sources; and

(3) income from other money in the fund.

---

[1]See Letter from Don A. Gilbert, Commissioner, Texas Health and Human Services Commission, to Honorable John Cornyn, Texas Attorney General (Aug. 23, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

*Id.* § 136.003(b). The Commission is authorized to "accept on behalf of the fund gifts and grants for the use and benefit of the program." *Id.* § 136.003(c).

Chapter 136 requires the Commission to "contract with and award money to a development corporation to carry out the purposes of this chapter." *Id.* § 136.004. The term "development corporation" is defined in chapter 136 to mean a "nonprofit corporation" that:

> (A) provides revolving loan funds to community health centers;
>
> (B) accepts gifts and grants;
>
> (C) seeks funding from various government and private sources; and
>
> (D) associates with a broad-based organization serving community health centers.

*Id.* § 136.002(3). Before contracting with a development corporation, the Commission must require the development corporation "to establish an investment committee to approve loan requests of community health centers." *Id.* § 136.005(a); *see also id.* § 136.005(b) ("The investment committee must consist of seven members as follows: (1) at least two members with lending experience; (2) at least two members who receive health care services from a community health center; and (3) at least one member who represents the Texas Association of Community Health Centers, Inc.").

"The development corporation may make a loan to a community health center only with the approval of the investment committee." *Id.* § 136.006(a). The development corporation is required to use "at least 60 percent of the money received under the program for loans to community health centers in existence for at least one year before the loan date." *Id.* § 136.006(b). "The development corporation may make a loan under the program through a partnership or joint investment with one or more financial institutions or federal or state programs." *Id.* § 136.006(d). Chapter 136 provides that payments on community health center loans shall be made to the development corporation. *See id.* § 136.006(e). "The development corporation shall use the loan payment money received from community health centers to make new loans as provided by" chapter 136. *Id.*

Chapter 136 also provides that the development corporation may "make grants to eligible community health centers from money other than money that is received from the fund and that was derived from a legislative appropriation" and may "seek funds from state or federal agencies or private sources to supplement and complement the funds received under the program" under rules adopted by the Commission. *Id.* § 136.009(b). We understand that the Commission has not yet entered into a contract with a development corporation or adopted rules implementing chapter 136.[2]

---

[2]Telephone Conversation with Steve Aragon, General Counsel, Texas Health and Human Services Commission (Dec. 17, 2002).

## II. The Status of the Fund in Light of House Bill 3088

Your predecessor asked about the status of the Fund in light of House Bill 3088. First, he asked if the Fund "or any of its components exist or function as trust funds outside of the treasury." Request Letter, *supra* note 1, at 1 (Question 1).

Chapter 136 was enacted by the Seventy-seventh Legislature as House Bill 2574 on May 23, 2001.[3] Two days later, on May 25, 2001, the legislature enacted House Bill 3088,[4] which abolished certain funds, accounts, and dedications of revenue enacted during the same legislative session, including the Fund. To the extent the two bills conflict, House Bill 3088, the later enacted provision, prevails. *See* TEX. GOV'T CODE ANN. § 311.025(a) (Vernon 1998) ("[I]f statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails."), (d) ("In this section, the date of enactment is the date on which the last legislative vote is taken on the bill enacting the statute."); *see also supra* notes 3 & 4 (dates of enactment for House Bill 2574 and House Bill 3088).

Most of House Bill 3088 was not codified but can be found in the historical and statutory notes to section 403.095 of the Government Code. *See* TEX. GOV'T CODE ANN. § 403.095 historical and statutory notes (Vernon Supp. 2003). Section 2 of House Bill 3088, the bill's primary operative provision, states:

> Except as otherwise specifically provided by this Act, *all funds and accounts created or re-created in the state treasury by an Act of the 77th Legislature*, Regular Session, 2001, that becomes law, and all dedications or rededications of revenue in the state treasury or otherwise collected by a state agency for a particular purpose by an Act of the 77th Legislature, Regular Session, 2001, that becomes law, *are abolished* on the later of August 27, 2001, or the date the Act creating or re-creating the fund or account or dedicating or rededicating revenue takes effect.

Act of May 25, 2001, 77th Leg., R.S., ch. 1466, § 2, 2001 Tex. Gen. Laws 5216 (emphasis added).

Section 8 of House Bill 3088 addresses the status of trust funds in general and the Fund in particular. Under section 8(a), trust funds created by the Seventy-seventh Legislature are, as a general matter, not abolished under section 2, but must be held in the state treasury, with the Comptroller as trustee, or outside the state treasury with the Comptroller's approval:

---

[3]*See* Act of May 23, 2001, 77th Leg., R.S., ch. 878, 2001 Tex. Gen. Laws 1759, 1761; S.J. OF TEX., 77th Leg., R.S. 2951 (2001).

[4]*See* Act of May 25, 2001, 77th Leg., R.S., ch. 1466, 2001 Tex. Gen. Laws 5216, 5221; S.J. OF TEX., 77th Leg., R.S. 3655 (2001).

> Section 2 of this Act does not apply to trust funds or dedicated revenue deposited to trust funds created under an Act of the 77th Legislature, Regular Session, 2001, except that the trust funds shall be held in the state treasury, with the comptroller in trust, or outside the state treasury with the comptroller's approval.

*Id.* § 8(a), 2001 Tex. Gen. Laws at 5218. Significantly for our purposes, however, section 8(a) does not apply to the Fund. Section 8(d) expressly addresses the Fund, providing that "[n]otwithstanding Subsection (a) of this section, Section 2 of this Act applies to the community health center revolving loan fund created by House Bill No. 2574 and to revenue dedicated to the fund." *Id.* § 8(d), 2001 Tex. Gen. Laws at 5219.

Thus, the Fund does not exist as a trust fund outside the state treasury as provided in House Bill 2574. *See* Act of May 23, 2001, 77th Leg., R.S., ch. 878, § 1, sec. 136.003, 2001 Tex. Gen. Laws 1759, 1760 (enacting Human Resources Code section 136.003); *see also* TEX. GOV'T CODE ANN. § 311.025(a), (d) (Vernon 1998) (to extent two bills enacted in the same session conflict, the later enacted provision prevails). Furthermore, under House Bill 3088, the Fund may not be held in the state treasury, with the Comptroller as trustee, or outside the state treasury with the Comptroller's approval as provided in section 8(a). Rather, the Fund is abolished by operation of section 2 of House Bill 3088 and does not exist as a separate fund or account either inside or outside the state treasury. In sum, the Fund has no legal existence separate and apart from other undedicated monies in the state treasury.

In light of House Bill 3088, your predecessor also asked whether the Fund exists "in a manner consistent with the intent of chapter 136?" Request Letter, *supra* note 1, at 1 (Question 1). As a result of House Bill 3088, the Fund does not exist as a trust fund outside the state treasury. This significantly affects the authority of the Commission to expend money under chapter 136. Because the Fund does not exist as a trust fund outside the state treasury, any money appropriated to the Fund by the legislature would be held in the state treasury. Furthermore, the Commission would have to deposit any other monies the Fund receives, such as grants or gifts from other sources, in the state treasury. *See* TEX. HUM. RES. CODE ANN. § 136.003(c) (Vernon Supp. 2003) (Commission "may accept on behalf of the fund gifts and grants for the use and benefit of the program").

Funds in the state treasury may not be expended without a legislative appropriation. *See* TEX. CONST. art. VIII, § 6 ("No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law . . . ."); *see also Bullock v. Calvert*, 480 S.W.2d 367, 370 (Tex. 1972) ("The appropriation of state money is a legislative function."). We understand that the Seventy-seventh Legislature did not make a specific appropriation for the purpose of carrying out chapter 136 or otherwise authorize the Commission to spend money for this purpose in an appropriations act.[5] With no legislative appropriation, the Commission is effectively precluded from expending state funds in the state treasury to carry out the purposes of chapter 136. And, if the Commission were

---

[5]Telephone Conversation with Steve Aragon, General Counsel, Texas Health and Human Services Commission (Dec. 17, 2002).

to receive gifts or grants from other sources on behalf of the Fund under chapter 136, it would be required to deposit those monies in the state treasury and could not spend them due to the lack of a legislative appropriation, with the two exceptions noted below.

The Commission may have authority to spend certain gifts and federal funds granted to the Commission for the purpose of carrying out chapter 136. First, section 8.01(a) of the general provisions of the 2001 General Appropriations Act provides that a gift or bequest of money to a state agency "that has specific authority to accept gifts is appropriated to the agency designated by the grantor and for the purpose the grantor may specify." 2001 General Appropriations Act, 77th Leg., R.S., S.B. 1, art. IX, § 8.01(a), at IX-65. Because the Commission is authorized by section 136.003 of the Human Resources Code to accept gifts on behalf of the Fund, this rider would provide authority for the Commission to use such money for the purpose specified by the grantor. We note, however, that section 8.01 limits the authority of an agency to transfer a gift or bequest to "a private or public development fund or foundation." *Id.* § 8.01(c). We do not determine here whether this would limit the authority of the Commission to transfer a gift or bequest to the development corporation.

Second, Rider 34 to the Commission's appropriation provides in pertinent part as follows:

> Notwithstanding the General Provisions of this Act, the Health and Human Services Commission is hereby authorized to receive and disburse in accordance with plans acceptable to the responsible federal agency, all federal moneys that are made available (including grants, allotments, and reimbursements) to the state and retain their character as Federal Funds for such purposes[,] . . . and such moneys are hereby appropriated to the specific purpose or purposes for which they are granted or otherwise made available.

2001 General Appropriations Act, 77th Leg., R.S., S.B. 1, art. II, rider 34, at II-57.[6] To date, however, the Commission has not received any federal money for the purpose of carrying out chapter 136.[7] Whether this rider would apply to any particular federal grant is beyond the scope of your predecessor's query.

Finally, we have received a brief suggesting that the development corporation rather than the Commission holds the Fund and arguing that House Bill 3088 "does not limit the Fund's operation

---

[6]This rider appears to supersede the more general rider regarding federal funds and block grants in Article IX of the 2001 General Appropriations Act. *See* 2001 General Appropriations Act, 77th Leg., R.S., S.B. 1, art. IX, § 8.02, at IX-65-66.

[7]Telephone Conversation with Steve Aragon, General Counsel, Texas Health and Human Services Commission (Dec. 17, 2002).

to the extent that it collects revenue through federal and private sources, or even through state grants."[8] We disagree.

First, the development corporation does not hold the Fund. Section 136.003 provides that the Fund is held outside the state treasury by a financial institution and that the Commission administers the Fund "as a trustee on behalf of community health centers in this state." TEX. HUM. RES. CODE ANN. § 136.003(a) (Vernon Supp. 2003). The development corporation has no authority to hold the Fund and merely receives money from the Fund pursuant to a contract with the Commission. *See id.* § 136.004.

Second, monies received by the Commission on behalf of the Fund are part of the Fund and are within the Commission's control. Under section 136.003, the Commission may accept gifts and grants from public or private sources on behalf of the Fund, which are part of the Fund. *See id.* § 136.003(b)(2), (c). Chapter 136 does not give the development corporation authority over such gifts or grants. Section 136.009(b) requires the Commission to adopt a rule permitting the development corporation to seek other funding: "Under rules adopted by the commission, the development corporation may . . . seek funds from state or federal agencies or private sources to supplement and complement the funds received under the program." *Id.* § 136.009(b)(2). The fact that the development corporation may seek supplemental funding does not change the fact that gifts and grants accepted by the Commission on behalf of the Fund under section 136.003(c) are expressly made part of the Fund itself, *see id.* § 136.003(b)(2) (including "gifts or grants received from public or private sources" as part of the Fund), are subject to the Commission's control, *see id.* § 136.003(a) (Fund "administered by the commission as trustee on behalf of community health centers in this state"), and must be deposited in the state treasury.

## III. Ownership of Loan Income under Chapter 136

Although House Bill 3088 changes the legal nature of the Fund and significantly affects the funding of the chapter 136 program, House Bill 3088 did not repeal chapter 136. Therefore, we address your predecessor's questions about ownership of loan income and the constitutionality of chapter 136.

With respect to the ownership of loan income, section 136.008 provides that income on loans made under the program, including interest and administrative fees, is the property of the development corporation: "All income received on a loan made with money received under the program *is the property of the development corporation.* Income received on a loan includes the payment of interest by a borrower and the administrative fees assessed by the development corporation." *Id.* § 136.008 (emphasis added). In addition, section 136.006(e) provides that payments on community health center loans shall be made to the development corporation, which must use the money to make new loans. *See id.* § 136.006(e). Clearly, the development corporation is vested with ownership of loan income.

---

[8]Brief from David L. Ralston and Raymond B. Walker III, Jenkens & Gilchrist, P.C., to Honorable John Cornyn, Texas Attorney General at 3 (Oct. 15, 2002) (on file with Opinion Committee).

Your predecessor suggested that section 136.008 conflicts with section 136.003(b)(3), *see* Request Letter, *supra* note 1, at 6, and asked: "Are the provisions of chapter 136 regarding the ownership of loan income irreconcilably in conflict?" Request Letter, *supra* note 1, at 1 (Question 5).

Section 136.003(b) provides that the Fund is composed of "money appropriated to the fund by the legislature," TEX. HUM. RES. CODE ANN. § 136.003(b)(1) (Vernon Supp. 2003); "gifts or grants received from public or private sources," *id.* § 136.003(b)(2); and "*income from other money in the fund,*" *id.* § 136.003(b)(3) (emphasis added). The Commission interprets "income from other money in the fund" in section 136.003(b)(3) "to include the proceeds from loans to community health centers." Request Letter, *supra* note 1, at 6. This interpretation of section 136.003(b)(3) is incorrect. It is clear from the plain language of chapter 136 that the reference to "income from other money in the fund" in section 136.003(b)(3) does not include income from loans.

First, section 136.003(b)(3) allocates income from money in the Fund itself. It merely reiterates the common-law rule that interest follows principal, *see Sellers v. Harris County*, 483 S.W.2d 242, 243 (Tex. 1972), and is consistent with the intent of House Bill 2574 to establish the Fund as a trust fund outside the state treasury. *See* TEX. HUM. RES. CODE ANN. § 136.003(a) (Vernon Supp. 2003).[9] Section 136.003(b)(3) does not address the ownership of income on money that is not part of the Fund. Under chapter 136, the Commission administers the Fund pursuant to section 136.003, and, under section 136.004, awards money from the Fund to the development corporation to make loans. Money awarded to the development corporation passes from the Commission to the development corporation, and the money is no longer part of the Fund.

Second, section 136.008 is more specific with respect to ownership of income received on loans made by the development corporation and clearly governs the ownership of loan income. The Commission's construction of section 136.003(b)(3) conflicts with this express legislative statement and, moreover, would render it meaningless. *See Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex. 1987) (Texas Supreme Court "will give effect to all the words of a statute and not treat any statutory language as surplusage if possible") (citing *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963)); *see also Tex. Workers' Comp. Ins. Fund v. Del Indus. Inc.*, 35 S.W.3d 591, 593 (Tex. 2000) ("It is settled that every word in a statute is presumed to have been used for a purpose . . . .") (citing *Perkins*, 367 S.W.2d at 146), TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1998) (in enacting a statute, it is presumed that "the entire statute is intended to be effective") (Code Construction Act).

## IV.    The Constitutionality of Chapter 136

### A.    Article III, Sections 50 and 51

Your predecessor asked about the constitutionality of chapter 136 under article III, sections 50 and 51 of the Texas Constitution. *See* TEX. CONST. art. III, §§ 50, 51.

---

[9]Of course, by operation of House Bill 3088, the Fund does not exist as a trust fund outside the state treasury. *See* Part II, *supra*; Act of May 25, 2001, 77th Leg., R.S., ch. 1466, § 8(d), 2001 Tex. Gen. Laws 5216, 5219 ("Notwithstanding Subsection (a) of this section, Section 2 of this Act applies to the community health center revolving loan fund created by House Bill No. 2574 and to revenue dedicated to the fund.").

Article III, section 51 provides that the legislature "shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever." *Id.* art. III, § 51. Section 51 prevents the gratuitous application of public funds to any individual. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995) (citing *Byrd v. City of Dallas*, 6 S.W.2d 738, 740 (1928)). But "[a] transfer of funds for a public purpose, with a clear public benefit received in return, does not amount to a lending of credit or grant of public funds" in violation of article III, section 51. *Edgewood*, 917 S.W.2d at 740. "Attorneys general long have interpreted section 51 not to forbid a state agency from expending public funds in a way 'that benefits a private person or entity if the . . . governing body (i) determines that the expenditure serves a public purpose and (ii) places sufficient controls on the transaction to ensure that the public purpose is carried out.'" Tex. Att'y Gen. Op. No. JC-0484 (2002) at 4 (citation omitted).

Article III, section 50 prohibits the legislature from giving or lending, or authorizing the giving or lending, "of the credit of the State in aid of, or to any person, association, or corporation." TEX. CONST. art. III, § 50. Like article III, section 51 and other constitutional limitations on the use of public funds to benefit a private individual or entity, article III, section 50 does not prohibit the lending of state credit if the loan serves a public purpose and includes controls to ensure that the public purpose is accomplished. *See* Tex. Att'y Gen. Op. Nos. JC-0489 (2002) at 6 (citation omitted), JC-0353 (2001) at 2; *see also* Tex. Att'y Gen. Op. Nos. JM-942 (1988) at 6-7; H-120 (1973) at 3; Tex. Att'y Gen. LA-119 (1977) at 2, LA-9 (1973) at 2.

Your predecessor asked whether chapter 136 "establish[es] a sufficient public purpose to support the lending of public funds as contemplated in the statute and in compliance with" article III, sections 50 and 51. Request Letter, *supra* note 1, at 1 (Question 2). Chapter 136 requires the Commission to contract with and award money to a development corporation that must, in turn, loan monies to community health centers. *See* TEX. HUM. RES. CODE ANN. §§ 136.004, 136.006 (Vernon Supp. 2003). The development corporation must use payments made on loans to make new loans under chapter 136. *See id.* § 136.006(e). Chapter 136 contains express legislative findings regarding the purpose of these loans:

> (1) community health centers play a significant role in the delivery of medical care and related services to the residents of this state who cannot afford health insurance;

> (2) community health centers are a cost-effective way to provide primary and preventive health care to populations lacking quality health care by reducing hospitalizations and the inappropriate use of emergency rooms;

> (3) the financing sources available for the capital needs of community health centers, such as buildings and equipment, are inadequate; and

> (4) increasing community health centers' access to capital would benefit residents of this state in poor and underserved communities and foreign-born residents who are uninsured, by providing greater access to primary care and preventive health services and by targeting the common health problems of these residents.

*Id.* § 136.001. These explicit findings indicate the legislature's determination that the Commission's contract with the development corporation and the development corporation's loans to community health centers would serve a public purpose.

Your predecessor also asked whether chapter 136 supplies "adequate controls to ensure the fulfillment of the public purpose consistent with sections 50 and 51 of Article III." Request Letter, *supra* note 1, at 1 (Question 3). A contract that imposes upon a recipient an obligation to perform a function benefitting the public may provide adequate controls for constitutional purposes. *See* Tex. Att'y Gen. Op. No. JC-0439 (2001) at 2 (citing *Key v. Comm'rs Ct. of Marion County*, 727 S.W.2d 667, 669 (Tex. App.–Texarkana 1987, no writ) (per curiam)). Because chapter 136 expressly requires the Commission to enter into a contract with the development corporation and requires the development corporation to enter into loan contracts with community health centers pursuant to Commission rules, *see* TEX. HUM. RES. CODE ANN. §§ 136.004 (Vernon Supp. 2003) (requiring Commission to "contract with and award mon[ies]" to the development corporation "to carry out the purposes of this chapter"), 136.009(a)(2) (Commission must adopt rules requiring a community health center to enter into an agreement with the development corporation that states the terms of the loan), it gives the Commission the authority to impose adequate contractual controls to ensure that the expenditure of funds under the chapter serves the public purpose identified by the legislature.

In sum, chapter 136 on its face does not violate article III, sections 50 and 51. The Commission has not yet entered into a contract with a development corporation or promulgated rules under chapter 136. Your predecessor did not ask and we do not address whether a specific contract between the Commission and a development corporation violates article III, sections 50 and 51, or whether Commission rules impose adequate controls.

## B.     Article III, Section 1

Finally, your predecessor asked whether the delegation of authority to the development corporation in chapter 136 complies with the constitution, *see* Request Letter, *supra* note 1, at 4-6, and "whether [the Commission] may remedy any potential constitutional shortcomings in the statute by administrative rule," *id.* at 5.

Article III, section 1 of the constitution vests "legislative power" in the legislature. *See* TEX. CONST. art. III, § 1 ("The Legislative power of this State shall be vested in a Senate and House of Representatives . . . ."); *see also id.* art. II, § 1 ("The powers of the Government of the State of Texas shall be divided into three distinct departments . . . and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except

in the instances herein expressly permitted."). In Texas, legislative power is defined broadly to include "the power to set public policy" and "functions that have administrative aspects, including the power to provide the details of the law, to promulgate rules and regulations to apply the law, and to ascertain conditions upon which existing laws may operate." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000) (citing *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 466-67 (Tex. 1997)).

"[T]he Legislature may delegate legislative power to local governments, administrative agencies, and even private entities under certain conditions." *Id.* (citing *Proctor v. Andrews*, 972 S.W.2d 729, 734-35 (Tex. 1998)). "The Legislature may delegate powers to agencies established to carry out legislative purposes as long as the Legislature establishes reasonable standards to guide the agency in exercising those powers." *Id.* (citing *Boll Weevil*, 952 S.W.2d at 467). The Texas Supreme Court has held that delegations to private entities must be subject to more stringent requirements and are entitled to less judicial deference than public delegations. *See id.* at 874 (citing *Proctor*, 972 S.W.2d at 735; *Boll Weevil*, 952 S.W.2d at 469-70). To determine whether there has been an impermissible delegation of legislative authority to a private entity, the court engages in a two-part inquiry. First, it considers whether there has been a delegation of legislative authority to a private entity. *See id.* If the court concludes that there has been a private delegation, the court then determines whether the delegation is constitutionally permissible by analyzing the delegation under eight factors first set forth in the *Boll Weevil* case. *See id.*

Under chapter 136, the development corporation is a nonprofit corporation that provides revolving loan funds to community health centers, accepts gifts and grants, seeks funding from various sources, "associates with a broad-based organization serving community health centers," and has established a loan committee to approve loan requests. *See* TEX. HUM. RES. CODE ANN. §§ 136.002(3), 136.005(a) (Vernon Supp. 2003).

Chapter 136 vests duties in both the development corporation and the Commission, a state agency. It delegates authority to the Commission to administer the Fund, to contract with and award money to a development corporation, and to adopt rules to administer the chapter. *See id.* §§ 136.003, 136.004, 136.009. The development corporation, in turn, is required to use the money it receives under chapter 136 to make loans to community health centers. *See id.* §§ 136.005, 136.006. Loan payments made by community health centers to the development corporation must be used to make new loans under chapter 136. *See id.* §§ 136.006(e), 136.007.

The functions that chapter 136 vests in the development corporation are not legislative in nature. Under chapter 136, the development corporation is vested with the duty to make loans with chapter 136 monies within parameters established by the Commission pursuant to contract and agency rules. *See id.* §§ 136.004-.006, 136.009. It may also seek funding from other sources and make grants from other monies under rules adopted by the Commission. *See id.* § 136.009(b). Chapter 136 does not give the development corporation "the power to set public policy" or "the power to provide the details of the law, to promulgate rules and regulations to apply the law, and to ascertain conditions upon which existing laws may operate." *FM Props.*, 22 S.W.3d at 873.

Furthermore, any authority vested in the development corporation by chapter 136 is subject to the control of the Commission, a state agency. The Commission is authorized pursuant to contract and agency rules to establish the parameters of the development corporation's authority to make loans with chapter 136 monies. The development corporation receives money and makes loans to community health centers under a contract with the Commission. *See* TEX. HUM. RES. CODE ANN. § 136.004 (Vernon Supp. 2003). Chapter 136 requires the Commission to adopt rules that impose controls and limitations on the authority of the development corporation to make loans. *See id.* § 136.009(a). These rules must require, among other things, that the Commission review the development corporation's lending and servicing practices and that the development corporation provide the Commission with semiannual reports giving the status of each loan made under the program. *See id.* § 136.009(a)(1), (3). And, significantly, the Commission "may adopt other rules as necessary to accomplish the purposes of this chapter." *Id.* § 136.009(c).

The Commission has not yet entered into a contract with a development corporation or adopted rules pursuant to chapter 136, and we do not consider whether any specific contract or rule impermissibly delegates authority to the development corporation. It is sufficient for our purposes here that chapter 136 on its face does not delegate legislative authority to the development corporation and that it vests the Commission with authority to establish and limit the development corporation's powers to make loans. Given this conclusion, we need not analyze the statute under the eight *Boll Weevil* factors.

## S U M M A R Y

In House Bill 2574, the Seventy-seventh Texas Legislature created the Texas Community Health Center Revolving Loan Fund as a trust fund outside the state treasury administered by the Health and Human Services Commission pursuant to chapter 136 of the Human Resources Code. *See* Act of May 23, 2001, 77th Leg., R.S., ch. 878, § 1, sec. 136.003, 2001 Tex. Gen. Laws 1759, 1760 (enacting Human Resources Code section 136.003). A later enacted bill, House Bill 3088, abolished the Fund. *See* Act of May 25, 2001, 77th Leg., R.S., ch. 1466, §§ 2, 8(a), (d), 2001 Tex. Gen. Laws 5216, 5218-19. As a result, the Fund does not exist as a trust fund outside the state treasury.

Pursuant to sections 136.006(c) and 136.008 of the Human Resources Code, income on a loan made by the development corporation under chapter 136 is the property of the development corporation that the development corporation must use to make new loans. *See* TEX. HUM. RES. CODE ANN. §§ 136.006(e), 136.008 (Vernon Supp. 2003). Chapter 136 of the Human Resources Code on its face does not violate article III, sections 50 and 51 or article III, section 1 of the Texas Constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General - General Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee