FILED IN
COURT OF CRIMINAL APPEALS

September 8, 2015

ABEL ACOSTA, CLERK

PD-0983-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/8/2015 10:10:35 AM
Accepted 9/8/2015 10:28:41 AM
ABEL ACOSTA
CLERK

## No. PD-0983-15

_____

IN THE COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

_____

MICHAEL AMOS

Appellant-Petitioner

vs.

THE STATE OF TEXAS

Appellee-Respondent

_____

Petition for Discretionary Review from the
Second Court of Appeals, Tarrant County
Appeal Number 02-13-00244-CR
Trial Court Number 1322040R
Honorable Mike Thomas, presiding

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
September 8, 2015

_____

Lisa Mullen
Attorney at Law
3149 Lackland Road, Suite 102
Fort Worth, Texas 76116
(817) 332-8900
State Bar No. 03254375
Lisa@MullenLawOffice.com

**Oral argument requested**

## *Table of Contents*

Table of Contents…………………………………………………………..ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .…iv

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . …v

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..v

Statement of Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . ….......v

Identity of Judge, Interested Parties, Counsel and Service…………………vi

Grounds Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . …...1

Ground 1…………………………………………………………….....2

> **THE COURT OF APPEALS ERRED IN FINDING FORFEITURE IN THE WHOLESALE ADMISSION OF THE STATE'S STAR WITNESS'S RECORDED STATEMENT IN DIRECT VIOLATION OF THE HEARSAY RULE WHERE THE OTHER SIMILAR TESTIMONY ADMITTED WAS IN NO WAY SUBSTANTIALLY THE SAME**

Ground 2………………………………………………………………..6

> **THE COURT OF APPEALS ERRED IN FINDING THE INDICTMENT ALLEGED CRUELTY TO ANIMALS WHERE THE ESSENTIAL ELEMENT OF 'IN A CRUEL MANNER' WAS NOT ALLEGED**

Ground 3………………………………………………………………….9

> **THE COURT OF APPEALS ERRED IN VALIDATING THE DENIAL OF SIX PROPER CHALLENGES FOR CAUSE**

Ground 4…………………………………………………………………12

> **THE COURT OF APPEALS ERRED IN VALIDATING A JURY CHARGE THAT OMITTED THE ESSENTIAL ELEMENT OF 'IN A CRUEL MANNER' IN A CRUELTY TO ANIMALS OFFENSE**

Ground 5………………………………………………………………….14

**THE COURT OF APPEALS ERRED IN FINDING ABANDONMENT OF THE DOG IN ORDER TO DENY THE MOTION TO SUPRESS THE DOG AUTOPSY**

Conclusion and Prayer for Relief………………………………………….16

Certificate of Service……………………………………………………17

Certificate of Compliance……………………………………………....17

Appendix……………………………………………………………..18

EXHIBIT A: Second Court of Appeals' July 2, 2015, published,
            Opinion

# TABLE OF AUTHORITIES

## Cases

*Amos v. State*, No. 02-13-00244-CR (Tex. App. – Fort Worth, delivered July 2, 2015 ....................11, 13, 14

*Crawford v. Washington*, 541 U.S. 36 (2004) ........................................................................4, 6

*Leadon v. State*, 332 S.W.3d 600 (Tex. App. – Houston [14th Dist.] 2010, no pet.)..................................... 11

*Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998) ................................................................. 6

*Lopez v. State*, 18 S.W.3d 220 (Tex. Crim. App. 2000) ........................................................4, 6

*McDuff v. State*, 939 S.W.2d 607 (Tex. Crim. App. 1997), cert denied, 522 U.S. 844 (1997).................... 15

*Ohio v. Roberts*, 448 U.S. 56 (1980) ......................................................................................4, 6

*Pointer v. Texas*, 380 U.S. 400 (1965) ..................................................................................4, 6

*Sells v. State*, 121 S.W.3d 748 (Tex. Crim. App. 2003) ........................................................11, 12

*State v. Kingsbury*, 129 S.W.3d 202 (Tex. App. – Corpus Christi 2004, no pet.) ....................................8, 12

*Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990) .................................................................. 8

*United States v. Diaz*, 637 F3d 592 (5th Cir. 2011)........................................................................4, 6

*Woodall v. State*, 336 S.W.3d 634 (Tex. Crim. App. 2011) ............................................................... 6

## Statutes

Tex. Code Crim. Proc., Art. 38.23....................................................................................... 20

Tex. Code Crim. Proc., Art. 35.16(c)(2)................................................................................ 17

Tex. Penal Code, Sec. 42.092(a)(3)..................................................................................... 14

Tex. Penal Code, Sec. 42.092(a)(8)..................................................................................... 13

Tx. Penal Code, Sec. 42.092(b)...............................................................................13, 14, 16

## Rules

Tex. R. App. Pro. 9.4(i)(3) ............................................................................................... 23

Tex. R. App. Pro. 66.3 (f)..............................................................................................8, 13, 15

Tex. R. App. Pro.66.3 (b)..............................................................................................8, 13, 15

Tex. R. Evid., R. 801 (e) (1)(A) ........................................................................................ 10

## Constitutional Provisions

TEX. CONST. Art. I, Sec. 9.............................................................................................. 20

U.S. Const. Amend. VI...............................................................................................10, 12

U.S. Const. Amend. VI, XIV............................................................................................ 12

## *Statement Regarding Oral Argument*

Petitioner believes oral argument would assist this Court in the discussion and exploration of the issues presented. Because this petition presents new and important issues of jurisprudential value, its disposition will have significant impact on the bench and bar of the State of Texas. Therefore, Petitioner respectfully requests the opportunity to participate in oral argument in the instant case.

## *Statement of the Case*

A jury found Petitioner guilty of cruelty to nonlivestock animal. R. Vol V -143; CR – 135. After finding the enhancement paragraph true, the jury assessed punishment at two years and seven months confinement in the Institutional Division of the Texas Department of Criminal Justice. CR – 6; R. Vol. VII -122; CR – 135. Petitioner timely filed written notice of appeal and the trial court certified his right of appeal. CR – 134, 140.

## *Statement of Procedural History*

On April 24, 2014, Petitioner's brief was timely filed raising five points of error. On July 2, 2015, the Second Court of Appeals denied all points of error to affirm the conviction.[1] A Motion for Rehearing was not filed. This court granted an extension of time to file this petition for discretionary review which is presently due on September 3, 2015, and will be timely filed.

---

[1] *Amos v. State*, No. 02-13-00244-CR (Tex. App. – Fort Worth, delivered July 2, 2015 (Attached as Appendix Exhibit A).

## *IDENTITY OF JUDGE, INTERESTED PARTIES AND COUNSEL*

I, Lisa Mullen, do hereby certify that a true and correct copy of the foregoing

Appellant's brief was mailed on September 8, 2015, to the interested parties listed below:

1) Tarrant County District Attorney's Office- Appellate Division-APPELLATE COUNSEL
401 West Belknap
Fort Worth, Texas 76196

2) Ms. Page Simpson & Ms. Brooke Panuthos- TRIAL PROSECUTORS
Assistant District Attorney, Tarrant County
401 West Belknap
Fort Worth, Texas 76196

3) Mr. Edward Jones, Esq.- TRIAL COUNSEL
Attorney at Law
1319 Ballinger Street
Fort Worth, Texas 76102

4) Mr. Michael Amos- PETITIONER
Appellant
5009 Roanoke Street
Fort Worth, Texas 76116

5) Judge Mike Thomas-
TRIAL COURT JUDGE
Crimial District Court
Number Four, Tarrant
County

*Lisa Mullen*
/s/ Lisa Mullen
ATTORNEY FOR APPELLANT
3149 Lackland Road, Ste. 102
Fort Worth, Texas 76116
(817) 332-8900
FAX: (817) 332-8904
Bar Number 03254375
Email: Lisa@Mullenlawoffice.com

## *Grounds Presented for Review*

**GROUND ONE:**

**THE COURT OF APPEALS ERRED IN FINDING FORFEITURE IN THE WHOLESALE ADMISSION OF THE STATE'S STAR WITNESS'S RECORDED STATEMENT IN DIRECT VIOLATION OF THE HEARSAY RULE WHERE THE OTHER TESTIMONY ADMITTED WAS IN NO WAY SUBSTANTIALLY THE SAME**

**GROUND TWO:**

**THE COURT OF APPEALS ERRED IN FINDING THE INDICTMENT ALLEGED CRUELTY TO ANIMALS WHERE THE ESSENTIAL ELEMENT OF 'IN A CRUEL MANNER' WAS NOT ALLEGED**

**GROUND THREE:**

**THE COURT OF APPEALS ERRED IN VALIDATING THE DENIAL OF SIX PROPER CHALLENGES FOR CAUSE**

**GROUND FOUR:**

**THE COURT OF APPEALS ERRED IN VALIDATING A JURY CHARGE THAT OMITTED THE ESSENTIAL ELEMENT OF 'IN A CRUEL MANNER' IN A CRUELTY TO ANIMALS OFFENSE**

**GROUND FIVE:**

**THE COURT OF APPEALS ERRED IN FINDING ABANDONMENT OF THE DOG IN ORDER TO DENY THE MOTION TO SUPRESS THE DOG AUTOPSY**

## *Argument Amplifying Reasons for Granting Review*

***Ground 1*: THE COURT OF APPEALS ERRED IN FINDING FORFEITURE IN THE WHOLESALE ADMISSION OF THE STATE'S STAR WITNESS'S RECORDED STATEMENT IN DIRECT VIOLATION OF THE HEARSAY RULE WHERE THE OTHER SIMILAR TESTIMONY ADMITTED WAS IN NO WAY SUBSTANTIALLY THE SAME**

## REASONS FOR GRANTING REVIEW

1) Review should be granted pursuant to Tex. R. App. Pro.66.3 (c) and (a) because the court of appeals has decided an important question of state law- i.e., the defense forfeits complaint where the court admits inadmissible hearsay evidence but other evidence is admitted *that is not the same import of the inadmissible hearsay*- in a way that conflicts with the applicable decisions of the Court of Criminal Appeals, the United States Supreme Court and other courts of appeals' decisions.

2) Review should be granted pursuant to Tex. R. App. Pro. 66.3 (f) because the court of appeals has so far departed from the accepted and usual course of judicial proceedings in their incorrect application of the law regarding forfeiture where the other evidence admitted is not substantively the same as the inadmissible hearsay so as to call for the exercise of this Court's supervisory power.

3) Review should be granted pursuant to Tex. R. App. Pro. 66.3 (b) because the court of appeals has decided an important question of state law i.e., whether other evidence admitted without objection that is not the same import as the admitted inadmissible evidence can result in error forfeiture, an issue that has not been, but desperately needs to be, settled and clarified by this Court.

The state's only eyewitness to the incident testified in court and did ***not*** graphically describe Petitioner hitting or beating the dog intentionally and, through cross-examination, admitted she did not actually see all the events she described. R. Vol. IV – 24 – 78. The witness testified that the dog went to the bathroom on the floor, as it often

2

did because it was not house broken, and ran under the bed. R. Vol. IV – 26, 48, 51-52. Petitioner got mad, got a broom and she heard noises in the bedroom and the dog yelping like she was scared but she could not see what was happening. R. Vol. IV – 28 – 30. She then saw the dog run out of the bedroom and under the futon where she was sitting and Petitioner continue to try to get the dog outside by sweeping and hitting the dog "like sideways" with the broom. R. Vol. IV – 30 – 33.

On cross-examination it became clear that she did not actually see Appellant hit the dog. R. Vol. IV – 55. She admitted she could not see what was going on in the bedroom but only heard and guessed as to what was happening. R. Vol. IV – 55- 56. She said the dog's crying was consistent with it getting into trouble and not necessarily being hit. R. Vol. IV – 55 - 56. She "thought" or "guessed" he had hit the dog and his use of the broom was more in a sweeping motion, from "side to side" to get her out from under the futon and outside. R. Vol. IV – 55, 60, 63, 76 - 77. When asked directly about her location during the incident and ability to see what was happening, she admitted she never actually saw the dog get hit. R. Vol. IV – 55 - 63.The prosecutor tried to rehabilitate her testimony by asking about her position in the room to develop that she could actually see the events. R. Vol. IV – 69 – 74. The witness still stated she did not actually see Appellant hit the dog with the broom but 'thought' he had. R. Vol. IV- 74 – 75.

Ultimately, the prosecutor, making no attempt to impeach her own witness nor lay a proper predicate to do so, simply offered the witness's unsworn audio statement through the detective as a "prior inconsistent statement…that is [an] exception to the hearsay rule". R. Vol. IV – 119 – 121. The defense vehement hearsay objection was

3

overruled and the entire audiotaped interview of the witness was admitted. R. Vol. IV – 119 – 121. The trial court clearly erred in the admission of highly prejudicial and completely inadmissible hearsay. Tex. R. Evid., R. 801; Tex. R. Evid., R. 801 (e) (1)(A); Tex. R. Evid., R. 613 (a); *Pointer v. Texas*, 380 U.S. 400 (1965); *Ohio v. Roberts*, 448 U.S. 56 (1980); *United States v. Diaz*, 637 F3d 592 (5th Cir. 2011); *Crawford v. Washington*, 541 U.S. 36 (2004); *Woodall v. State*, 336 S.W.3d 634 (Tex. Crim. App. 2011); *Lopez v. State*, 18 S.W.3d 220 (Tex. Crim. App. 2000); U.S. Const. Amend. VI, XIV.

The Court of Appeals held, "Detective Brian Clouse, who conducted the interview, testified and described [the witnesses] statement in the same manner as [the audiotaped interview], that is, in terms of Appellant striking the dog without qualifications. Appellant did not object to Detective Clouse's testimony. Therefore, we overrule his first point without reaching his hearsay arguments." *Amos v. State*, No. 02-13-00244-CR (Tex. App. – Fort Worth, delivered July 2, 2015 (Attached as Appendix Exhibit A).

This holding is in complete error when one compares and contrasts the Detective's testimony with the audiotaped statement. SX 2A, R. Vol. IV – 114 – 115. The Detective in no way describes the incident "in the same manner" as the audiotape. In the taped interview, and with the help of the Detective's questioning skills, the witness graphically described directly seeing a brutal, intentional "beating" of the dog. SX 2A. The witness stated "he starts beating her with a broom," and, "he started beating her until she stopped moving". SX 2A (6:13 – 16, 6:41 – 44). These statements, among numerous others in the audio statement, are in no regard the same as the testimony of the Detective.

4

R. Vol. IV – 114 – 115. The sum total of the Detective's testimony on the topic was as follows:

> [Prosecutor]: Okay. So your testimony is that *from your investigation and from [the witnesses] statements* that she was in that room, in the game room, when [Petitioner] allegedly beat the dog and she saw it?
> [Detective]: Okay. They initially heard something in the master bedroom. The dog – [Petitioner] had slammed the door closed. The dog came running out, hid underneath the futon where they were. And then [Petitioner] told them to get up. And they kind of stepped to the hallway. And that's when [Petitioner] began beating the dog.

(emphasis supplied) R. Vol. IV-114 – 115. This testimony in no way covers as much nor the same information and it is not near as graphic and damning as the audio statement. SX 2A, R. Vol. IV – 114 – 115. He also stated this information was from his investigation as a whole which does not mean that the witness actually told him this information. However, on the audiotape the witness, in her own words, described the events as though she had directly seen them and in very graphic terms. SX 2A.

Additionally, on the audiotape, the Detective interjected numerous personal and prejudicial opinions that he did not testify to. He stated that Appellant's acts were "pretty bad", what "he did was very, very wrong", people should "not hurt animals at all" and this "should not have happened at all". SX 2A. He also stated Appellant had admitted what he did and that this was "pretty bad". SX 2A. The audio also contained the hearsay statements of Appellant's girlfriend and daughter, as recited by the witness, none of which was testified to in court. SX 2A. Further, the audio discusses extraneous bad acts in that the witness states she was told Petitioner had hit the dog before with the broom and that his girlfriend had said he beat her head against a wall before. SX 2A. None of

5

this evidence was before the jury through any other means than the erroneous admission of the hearsay audiotape[2].

For all these reasons' the lower court's argument of forfeiture fails. *see and compare Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998). The Detective's testimony was not in any regard the same substantive evidence as was contained on the inadmissible hearsay audio tape; thus, the court of appeals erred in finding forfeiture of Petitioner's complaint. The lower court has so minimized and incorrectly applied the law regarding forfeiture as to require the corrective intervention, clarification and direction of this Court and Petitioner requests this Court to grant review and ultimately reverse and remand for the lower court to properly address Petitioners hearsay complaint.

**Ground 2: THE COURT OF APPEALS ERRED IN FINDING THE INDICTMENT ALLEGED CRUELTY TO ANIMALS WHERE THE ESSENTIAL ELEMENT OF 'IN A CRUEL MANNER' WAS NOT ALLEGED**

## REASONS FOR GRANTING REVIEW

1) Review should be granted pursuant to Tex. R. App. Pro. 66.3 (b) because the court of appeals has decided an important question of state law i.e., whether 'in a cruel manner' is an essential element of the offense of animal cruelty, which is an issue that has not been, but needs to be, settled and clarified by this Court.

---

[2] This recorded statement provides the perfect example of why out of court, unsworn and unquestioned statements are inadmissible in our court system and why the right to confront and cross examine witness's is a cornerstone of our system of justice. Tex. R. Evid., R. 801; *Pointer v. Texas*, 380 U.S. 400 (1965); *Ohio v. Roberts*, 448 U.S. 56 (1980); *United States v. Diaz*, 637 F3d 592 (5th Cir. 2011); *Crawford v. Washington*, 541 U.S. 36 (2004); *Woodall v. State*, 336 S.W.3d 634 (Tex. Crim. App. 2011); *Lopez v. State*, 18 S.W.3d 220 (Tex. Crim. App. 2000); U.S. Const. Amend. VI, XIV. In offering the prior audio statement, the prosecutor was merely seeking to get a better rendition of fact before the jury than was provided when cross examination brought to light the actual facts of the case and the witness's inability to see what she had assumed or 'thought' occurred. *See and compare* state exhibit 2A (the recording) with witness testimony.

2) Review should be granted pursuant to Tex. R. App. Pro.66.3 (c) and (a) because the court of appeals has decided an important question of state law, i.e., is 'in a cruel manner' an essential element of the offense, in a way that conflicts with decisions of the Court of Criminal Appeals and other courts of appeals'.

3) Review should be granted pursuant to Tex. R. App. Pro. 66.3 (f) because the court of appeals has so far departed from the accepted and usual course of judicial proceedings in their incorrect application of the law so as to call for the exercise of this Court's supervisory power.

Under section 42.092(b) of the Texas Penal Code, the State Jail Felony offense of cruelty to animals is legally defined as:

> (b) A person commits an offense if the person intentionally, knowingly, or recklessly:

>> (1) tortures an animal or in a cruel manner kills or causes serious bodily injury to an animal [or];

>> (2) without the owner's effective consent, kills, administers poison to, or causes serious bodily injury to an animal….

Tx. Penal Code, Sec. 42.092(b). Thus, under the statute, there are four ways cruelty to animals is defined as an offense: first, torture an animal; second, *in a cruel manner* kill an animal; third, *in a cruel manner* cause serious bodily injury to an animal; or, fourth, *without the owner's consent*, kill or cause serious bodily injury to an animal. Tx. Penal Code, Sec. 42.092(b). The term "torture" is legally defined as "any act that causes unjustifiable pain or suffering." Tex. Penal Code, Sec. 42.092(a)(8).The term "cruel manner" is legally defined as " a manner that causes or permits unjustified or unwarranted pain or suffering. Tex. Penal Code, Sec. 42.092(a)(3).

7

The instant indictment alleged the offense as follows: intentionally, knowingly or recklessly "torture or in a cruel manner kill *or cause serious bodily injury to an animal*, to wit: a dog, by hitting the dog with a broom or broomstick". CR – 6. This indictment alleges causing serious bodily injury alone as a crime. This is clearly not the law. Tx. Penal Code, Sec. 42.092(b). The serious bodily injury must occur either in a "cruel manner" or without the owner's consent as it is legally defined. Tx. Penal Code, Sec. 42.092(b). The state alleged neither in the indictment; thus, the indictment attempts to charge an offense that is not an offense under the law. *See State v. Kingsbury*, 129 S.W.3d 202 (Tex. App. – Corpus Christi 2004, no pet.). The defense filed and argued a Motion to Quash the indictment based on these grounds. CR – 106 – 109; R. Vol. III – 6-10. He continued to object and argue this issue throughout the trial. R. Vol. III – 42, 90, 104 - 107, 117 – 120, 164 – 165; R. Vol. V -  116 – 117.

Causing serious bodily injury to a dog, standing alone, does not constitute a felony offense. Tx. Penal Code, Sec. 42.092(b); *See State v. Kingsbury*, 129 S.W.3d 202 (Tex. App. – Corpus Christi 2004, no pet.). The act of causing serious bodily injury must be coupled with a "cruel manner" or without the owner's consent for it to be an offense. *Id*. Because the instant indictment alleges the offense without these essential elements, it does not sufficiently allege a felony offense under the serious bodily injury portion and, as such is fundamentally defective. *Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990). The trial court reversibly erred in denying the motion to quash, allowing the state to go forward with this charge and allowing a jury to convict for conduct that is not a

crime requiring this Court's review. *Id.;* CR – 113 – 118; R. Vol. III – 42, 90, 104 - 107, 117 – 120, 164 – 165; R. Vol. V - 116 – 117.

*Ground 3*: **THE COURT OF APPEALS ERRED IN VALIDATING THE DENIAL OF SIX PROPER CHALLENGES FOR CAUSE**

## REASONS FOR GRANTING REVIEW

1)  Review should be granted pursuant to Tex. R. App. Pro.66.3 (c)  and (a) because the court of appeals has decided an important question of state law- i.e., that general questions of the panel as a whole can be contradictory answers as to individual questions on voir dire sustaining the court's denial of challenges for cause- in a way that conflicts with the applicable decisions of the Court of Criminal Appeals, the United States Supreme Court and other courts of appeals' decisions and should be settled by this Court.

2)  Review should be granted pursuant to Tex. R. App. Pro. 66.3 (f) because the court of appeals has so far departed from the accepted and usual course of judicial proceedings in their incorrect application of the law regarding contradictory answers in voir dire and challenges for cause so as to call for the exercise of this Court's supervisory power.

Under section 42.092(b) of the Texas Penal Code, cruelty to animals occurs when:

(b) A person…intentionally, knowingly, or recklessly:

(1) tortures an animal or in a cruel manner kills or causes serious bodily injury to an animal [or];

(2) without the owner's effective consent, kills, administers poison to, or causes serious bodily injury to an animal….

Tx. Penal Code, Sec. 42.092(b).

9

In the instant case, trial counsel questioned the venire regarding their ability to follow this law in an animal cruelty case. Specifically, counsel questioned the jurors as to whether they could follow the law that states killing or causing serious bodily injury to an animal, standing alone, is not an offense. Tx. Penal Code, Sec. 42.092(b). After some preamble and discussion of the statutory law, defense counsel developed the following six challenges for cause:

> So I'm going to ask this section, if you can't follow the law, that's fine. But if you're sitting over here, you have to follow the law.
> If they prove—and I'm not saying they will, but let's say intentionally, knowingly, recklessly they prove—and we'll go through all that—someone killed something, an animal, but they don't prove beyond a reasonable doubt cruel manner, i.e., pain and suffering, can you find the person not guilty? Can you follow the law? Can you really do it?
> If you cannot follow the law, please raise your hand because you shouldn't be on this jury. And there's nothing wrong with that.
> Okay. Keep your hands up. If you can't follow the law, there's nothing wrong with that, nobody is saying you're a bad person.
>
> …[irrelevant jurors raise hand, state they cannot follow law]
>
> Mr. Jones [Defense counsel]: Daniel Richmond?
> Venireman Richmond: Yes.
> Mr Jones: You cannot follow the law in that respect. Is that a fair statement?
> Venireman Richmond: That's a fair statement.
> Mr. Jones: Teresa Fay, you cannot follow the law in that respect?
> Venirewoman Fay: No.
> Mr. Jones: Ms. Whitley?
> Venirewoman Whitley: Yes.
> Mr. Jones: You cannot follow the law in that respect. Is that a fair statement?
> Venirewoman Whitley: Yes.
> Mr. Jones: Mr. Lucas, you cannot follow the law in that respect. Is that a fair statement?
> Venireman Lucas: Yes.
>
> …[irrelevant jurors state they cannot follow law]
>
> Mr. Jones: Just a second. Mr. –
> Venireman Santocono: Santocono.

10

Mr Jones: oh, okay. Under the – you cannot follow the law under that respect. Is that a fair statement?

Venireman Santocono: Yes.

R. Vol. III – 101 – 115. Additionally, on the same qualifying question Venireman Laroche later raised his hand stating he could not follow the law. R. Vol. III – 115. Thus, each juror specifically understood the law and could not follow it, demonstrating their bias or prejudice against the law applicable to the case upon which the defense was entitled to rely. Tex. Code Crim. Proc., Art. 35.16(c) (2). Defense counsel challenged each of these jurors for cause, and each of his challenges were denied. R. Vol. III – 164 – 165. The trial court erred in denying these proper challenges for cause. Tex. Code Crim. Proc., Art. 35.16(c) (2); *Sells v. State*, 121 S.W.3d 748 (Tex. Crim. App. 2003).

The court of appeals held that these jurors gave "contradictory answers" by not raising their hand later in defense voir dire, as counsel was explaining the legal standard of beyond a reasonable doubt and got the panel as a whole to agree to make the state prove the elements of the offense beyond a reasonable doubt. R. Vol. III – 132 – 135. The court then ruled, because the jurors gave contradictory answers by agreeing in mass, "[t]herefore, according deference to the trial court's decision, we conclude the trial court did not abuse its discretion." *Amos v. State*, No. 02-13-00244-CR (Tex. App. – Fort Worth, delivered July 2, 2015 (Attached as Appendix Exhibit A).

The court cited a Houston court of appeals case as authority for this statement: *Leadon v. State*, 332 S.W.3d 600 (Tex. App. – Houston [14th Dist.] 2010, no pet.). However, *Leadon* is inapplicable because the general question proffered was the same question the jurors had answered differently prior thereto and was asked by different trial counsel. *Id.* When jurors individually and very specifically state they would not follow a

11

specific portion of the law and not require the state to prove a specific element of an offense, a general question to the entire panel via the same attorney on a different legal topic cannot suffice as a "contradictory" answer. *See* Tex. Code Crim. Proc., Art. 35.16(c) (2); *Sells v. State*, 121 S.W.3d 748 (Tex. Crim. App. 2003). Because the court so found, the supervisory intervention of this court is respectfully requested.

**Ground 4: THE COURT OF APPEALS ERRED IN VALIDATING A JURY CHARGE THAT OMITTED THE ESSENTIAL ELEMENT OF 'IN A CRUEL MANNER' IN A CRUELTY TO ANIMALS OFFENSE**

## REASONS FOR GRANTING REVIEW

1) Review should be granted pursuant to Tex. R. App. Pro. 66.3 (b) because the court of appeals has decided an important question of state law i.e., whether 'in a cruel manner' is an essential element of the offense of animal cruelty required to be plead in the jury charge, which is an issue that has not been, but needs to be, settled and clarified by this Court.

As stated heretofore in Reason for Review Number Two, and not to be belabored here, under our cruelty to animal statute, the act of causing serious bodily injury to a dog, standing alone, does not constitute a felony offense. Tx. Penal Code, Sec. 42.092(b); *See State v. Kingsbury*, 129 S.W.3d 202 (Tex. App. – Corpus Christi 2004, no pet.). The act of causing serious bodily injury must be coupled with a "cruel manner". *Id*. The instant indictment did not properly allege the serious bodily injury aspect of the offense. CR- 6; *see also* discussion in Ground for Review Number Two. The court's charge, likewise, did not require the jury to require to find serious bodily injury occurred to the dog in a "cruel manner". CR – 113 – 118. The charging paragraph read, in pertinent part, if you find the

12

Defendant did "intentionally or knowingly torture or in a cruel manner kill or cause serious bodily injury to an animal, to wit: a dog, by hitting the dog with a broom or broomstick" then you will find the Defendant guilty. CR – 114. Trial counsel objected to the charge and asked that the charging paragraph include the statutory requirement of "cruel manner" be applied to the serious bodily injury portion of the charging paragraph. R. Vol. V – 116 – 117. The state did not object, yet the court denied the request. R. Vol. V – 117.

The court of appeals upheld the trial court's denial stating "[b]ecause the jury charge tracked the statutory language, the trial court did not err." *Amos v. State*, No. 02-13-00244-CR (Tex. App. – Fort Worth, delivered July 2, 2015 (Attached as Appendix Exhibit A). The jury charge allowed the jury to convict Appellant without requiring them to find all the essential elements of the offense beyond a reasonable doubt, i.e., of causing serious bodily injury to the dog without proof that it was done in a 'cruel manner' as required by law. Tx. Penal Code, Sec. 42.092(b). Because the verdict was a general verdict and the jurors were not required to agree on which theory to convict, as pointed out in the state's closing argument, Appellant could have been convicted of causing serious bodily injury without proof of a cruel manner which is not an offense under our law. R. Vol. V – 122; CR – 114; Tx. Penal Code, Sec. 42.092(b). To allow a jury to convict Petitioner of a crime without every essential element being proven beyond a reasonable doubt, as the instant jury charge does, requires reversal. Thus, the lower court erred requiring this Court's intervention and review.

13

**Ground 5:** THE COURT OF APPEALS ERRED IN FINDING ABANDONMENT OF THE DOG IN ORDER TO DENY THE MOTION TO SUPRESS THE DOG AUTOPSY

# REASONS FOR GRANTING REVIEW

1) Review should be granted pursuant to Tex. R. App. Pro. 66.3 (b) because the court of appeals has decided an important question of state law i.e., whether cremation of a deceased dog is abandonment, which is an issue that has not been, but needs to be, settled and clarified by this Court.

This case presents interesting and novel questions of law: whether a search warrant is required to perform an autopsy upon an owner's dog and whether a request for cremation constitutes abandonment. The court of appeals found that a dog is personal property and subject to the same protections as any other property. *Amos v. State*, No. 02-13-00244-CR (Tex. App. – Fort Worth, delivered July 2, 2015 (Attached as Appendix Exhibit A).

In the instant case, Petitioner took the dog to the vet and, upon learning she was deceased, requested and paid for the dog's cremation. R. Vol. IV – 36, 96 - 97, 162 – 163, 194. Further, Appellant's girlfriend came back to the vet at a later time to pay the remainder of the fee for cremation. R. Vol. IV – 96 - 97. However, rather than cremating the dog, the vet contacted the detective who then had the dog sent to another vet to have an autopsy or "necropsy" performed. R. Vol. IV – 97 – 99. No warrant was obtained to search or seize the dog. R. Vol. IV – 97 – 99.

The search of the dog, i.e., the autopsy, was an illegal search under State and Federal constitutions requiring suppression because it was conducted at the behest of law enforcement without a warrant. TEX. CONST. Art. I, Sec. 9; U.S. CONST. amend. IV ; Tex. Code Crim. Proc., Art. 38.23. Appellant did not consent to the search of his dog nor

14

did he abandon the dog, he, in fact, requested and paid for cremation, exhibiting an expectation of privacy and ownership. R. Vol. IV – 36, 96 - 97, 143, 162 - 163.

The court of appeals agreed on all the Fourth Amendment issues concerning the dog being protected property and a warrant would be required to do the search, i.e., the autopsy on the dog. However, the court found Petitioner abandoned the dog when he left her at the vet and paid for a communal cremation vitiating the warrant requirement. R. Vol. IV – 36, 96 - 97, 143, 162 - 163. The very fact Petitioner paid for a communal cremation and his girlfriend returned to pay the rest of the fee, reflects his continued possessory interest in his dog after leaving her at the vet. R. Vol. IV – 96 - 98, 143, 162 - 163. Although he did not express intention to retrieve her ashes, he did exercise a continued possessory interest by determining what happened to her after he left her constituting a continuing possessory interest in his property, not abandonment. R. Vol. IV – 36, 96 - 97, 162 – 163, 194.

The vet tech herself acknowledged and sanctioned Petitioner's continued possessory interest in the dog by discussing with him the options and ultimately asking him what he wished to do with the dog. R. Vol. IV – 36, 96 - 97, 162 – 163, 194. The misconduct of the vet and the police resulted in the dog not being cremated as Petitioner had paid for but, instead, being seized for autopsy. *See and compare McDuff v. State*, 939 S.W.2d 607 (Tex. Crim. App. 1997), cert denied, 522 U.S. 844 (1997).  For all these reasons, the court erred in finding abandonment requiring review of this Court.

15

### *Conclusion and Prayer for Relief*

**WHEREFORE, ALL PREMISES CONSIDERED**, petitioner prays this Court grant review and, after a full briefing on the merits, issue an opinion reversing and remanding and resolving these important issues so that the bench and bar of this state will know how to address similar issues in the future.

Respectfully submitted,

*Lisa Mullen*

/s/ Lisa Mullen
Attorney at Law
3149 Lackland Road, Suite 102
Fort Worth, Texas 76116
(817) 332-8900
State Bar No. 03254375
Lisa@MullenLawOffice.com

## *Certificate of Service*

I hereby certify that a true copy of this document was served on September 8, 2015, by mail delivery upon Assistant District Attorney Charles Mallin, Appellate Section, Tarrant County District Attorney's Office, 401 West Belknap, Fort Worth, Texas 76104, and by mail delivery upon the Office of the State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711.

*Lisa Mullen*

/s/ Lisa Mullen
Attorney at Law

## CERTIFICATE OF COMPLIANCE

I, Lisa Mullen, pursuant to Rule 9.4(i)(2)(D) of the Texas Rules of Appellate Procedure, do hereby certify the word count of the applicable portions of this Petition for Discretionary Review is 4,452 words and within the 4,500 word limit as required by the rules.

*Lisa Mullen*

/s/ Lisa Mullen
Attorney at Law
3149 Lackland Road, Suite 102
Fort Worth, Texas 76116
(817) 332-8900
State Bar No. 03254375
Lisa@MullenLawOffice.com

# APPENDIX

# EXHIBIT A



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-13-00244-CR**

MICHAEL AMOS                                                      APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
TRIAL COURT NO. 1322040R

----------

## OPINION

----------

A jury found Appellant Michael Amos guilty of the offense of cruelty to a nonlivestock animal. After finding an enhancement paragraph true, the jury assessed Appellant's punishment at thirty-one months' confinement in the Institutional Division of the Texas Department of Criminal Justice.[1] Appellant

---

[1]Appellant's charged offense constituted a state jail felony. Tex. Penal Code Ann. § 42.092(c) (West 2011). However, the State enhanced his offense with a prior murder conviction with an affirmative deadly weapon finding, making

asserts five issues in which he attacks, respectively, (1) the admission of a State's witness's recorded statement to the police, (2) the denial of his motion to quash the indictment, (3) the denial of six of his challenges for cause, (4) the denial of his objection to the charge, and (5) the denial of his motion to suppress. We affirm.

## Evidence

On May 13, 2011, then ten-year-old H.C. spent the night at Appellant's house with Appellant's daughter, W. That evening, Zoe, a Shih Tzu weighing about six or seven pounds, urinated and defecated in Appellant's and his girlfriend's bedroom, and Appellant got angry. Appellant asked where the broom was, and H.C. then saw Appellant walking back to the bedroom with a broom. H.C. heard Appellant shut the bedroom door so that only Appellant and Zoe were in the room, and then she heard Zoe "yelping and crying, like she was scared." H.C. said she then heard banging against the door for a while, but she did not know what was causing it.

Appellant then came out of the bedroom, and Zoe ran into the game room where H.C. and W. were and hid underneath the futon. H.C. thought Zoe seemed scared. Appellant then followed Zoe into the game room and, while H.C.

_____

the offense punishable as a third degree felony. *Id.* § 12.35(c)(2)(B) (West Supp. 2014). The jury assessed Appellant's punishment at thirty-one months out of a possible 120 months. *Id.* § 12.34 (West 2011).

2

was sitting on the futon, tried to sweep Zoe out from underneath it with the broom.

H.C. said she got scared, got up, and went into the living room. W. followed her. While standing in the doorway, H.C. saw Appellant pulling on the part of the futon that sat against the wall and also saw Zoe "kind of crawl[ing] out." Then she described Appellant as "kind of hitting her like where she's out." H.C. said when Zoe tried to crawl out, Appellant would start to hit her with the broom. When asked to describe how Appellant was using the broom, she testified:

> A.  It was kind of like—see how to explain it.  He was poking sometimes and then kind of like hitting her, I guess.  I don't—like—like sideways.
>
> Q. Like—sort of like this (demonstrating)?
>
> A. Yeah.
>
> Q. Okay.  And is he hitting the futon or is he actually hitting Zoe?
>
> A. Actually hitting Zoe.
>
> Q. And can you tell which part of the broom is actually hitting her?  Is it the bristles or the part that holds all the bristles together?
>
> A. I don't remember.
>
> Q. Okay.  And, at that point, do you see Zoe move after that?
>
> A. No.
>
> . . .
>
> Q. Did you think that she was dead at that point?

3

A. Yes.

Later H.C. qualified what she actually saw:

A. I can see the broom, like, being, like, swung at her.

Q. Swung at her. But you can't tell where on Zoe's body she's being hit?

A. No. But there was only that half of her so . . .

Q. Is he hitting the futon or is he hitting Zoe?

A. I thought he was hitting Zoe.

H.C. concluded, "I see her not moving when he got done, when [Appellant] got done hitting her." H.C. said Appellant then told her to put Zoe outside.

The critical care nurse at Metro West Veterinary Emergency Center to whom Appellant spoke on the telephone before bringing Zoe in said that Appellant described Zoe as having been "flailing," which the nurse said indicated Zoe was in pain. The emergency and critical care specialist who examined Zoe at the Metro West Veterinary Emergency Center said Zoe had suffered a linear blunt force trauma injury to her head and eye consistent with being hit with a broom handle. She concluded linear blunt force trauma, consistent with being struck by a broom handle swung like a baseball bat and with considerable force, caused Zoe's death. When asked if Zoe would have felt pain, the specialist's response was, "Absolutely." Regarding her office's decision to contact the police, the specialist said she was obligated, as a veterinarian, to report any cases where she suspected animal cruelty. As a veterinarian, she said that she took an

4

oath to protect the welfare of animals under her care and that she had a duty to speak for those who could not.

A veterinarian at the veterinary diagnostic laboratory at Texas A & M University performed a necropsy on Zoe, a Shih Tzu, which the veterinarian described as a toy breed that was bred to provide companionship to humans. Small dogs like Zoe scare very easily, are not trained to attack or guard, and when caught in a stressful situation, will try to escape and hide. Another veterinarian had submitted Zoe for the necropsy, and although the veterinarian who performed the necropsy normally would not be allowed to discuss the case with anyone outside the laboratory, in this instance his records were subpoenaed. A necropsy is a systematic external and, by means of dissection, internal inspection of an animal. After examining Zoe, he determined that the cause of death was a severe intracranial hemorrhage that led to heart and respiratory failure. He described the cause as blunt trauma, which meant a relatively hard object caused the damage.

### The Admission of H.C.'s Recorded Statement

In his first point, Appellant argues that the trial court erred by admitting H.C.'s recorded statement to police (State's Exhibit 2A) because it was inadmissible hearsay under rule of evidence 801(d) and (e)(1)(A) and rule of evidence 613(a). However, a trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Estrada v. State*, 313 S.W.3d 274,

5

302 n.29 (Tex. Crim. App. 2010) (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)), *cert. denied*, 131 S. Ct. 905 (2011); *Lane v State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004). We have reviewed State's Exhibit 2A and H.C.'s testimony. The biggest difference between the two is that H.C. describes Appellant hitting Zoe with a broom in the recording but, in her testimony, acknowledges never actually seeing the broom strike the dog. Detective Brian Clouse, who conducted the interview, testified and described H.C.'s statement in the same manner as State's Exhibit 2A, that is, in terms of Appellant striking the dog without any qualifications. Appellant did not object to Detective Clouse's testimony. Therefore, we overrule his first point without reaching his hearsay arguments.

### Whether the Indictment Alleged an Offense

In Appellant's second point, he argues the trial court erred by denying his motion to quash the indictment for failing to allege an offense. Section 42.092(b) of the Texas Penal Code, which is entitled "Cruelty to Nonlivestock Animals," provides: "(b) A person commits an offense if the person intentionally, knowingly, or recklessly: (1) tortures an animal or in a cruel manner kills or causes serious bodily injury to an animal . . . ." Tex. Penal Code Ann. § 42.092(b)(1) (West 2011).[2] Appellant contends that, under this statute, causing serious bodily injury

---

[2]"Torture" is defined as "any act that causes unjustifiable pain or suffering." *Id.* § 42.092(a)(8). "Cruel manner" is defined as including "a manner that causes or permits unjustified or unwarranted pain or suffering." *Id.* § 42.092(a)(3).

to an animal is not an offense; rather, the statute requires a person to cause serious bodily injury in a cruel manner. Appellant complains that the indictment improperly alleges that causing serious bodily injury alone is a crime. But Appellant acknowledged at the hearing on the motion to quash that the indictment tracked the statute and conceded that, under the statute (and hence, the indictment), "a cruel manner" applied to both killing an animal or causing serious bodily injury.[3] The trial court denied Appellant's motion to quash.

An indictment that tracks the language of a criminal statue is sufficient to allege an offense. *See State v. Edmond*, 933 S.W.2d 120, 127 (Tex. Crim. App. 1996). The indictment here tracks the statutory language. We overrule Appellant's second point.

### The Denial of Six of Appellant's Challenges for Cause

In his third point, Appellant contends the trial court erred by denying six of his challenges for cause. Appellant contends six venire members said they would find someone guilty if the person killed an animal even if the State did not prove that the killing was in a cruel manner, that is, even if the State failed to prove pain and suffering.

An appellate court will reverse a trial court's ruling on a challenge for cause only in the case of a clear abuse of discretion. *Curry v. State*, 910 S.W.2d 490,

---

[3]Appellant's motion to quash attacked earlier versions of the indictment that did not track the statutory language. About a month before trial, the State filed an indictment tracking the statutory language.

493 (Tex. Crim. App. 1995). A clear abuse of discretion occurs only when the trial court's decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993). A trial court deciding a matter within its discretionary authority in a different manner than the appellate court would in a similar circumstance does not show an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When determining whether the trial court erred by refusing to excuse a juror, an appellate court must examine the record as a whole and accord due deference to the trial judge who was in a position to see and hear the venire person. *See McCoy v. State*, 713 S.W.2d 940, 945, 951 (Tex. Crim. App. 1986), *cert. denied*, 480 U.S. 940 (1987). When prospective jurors provide vacillating, unclear, or contradictory answers, appellate courts accord deference to the trial court's decision. *Russeau v. State*, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006), *and cert. denied*, 548 U.S. 927 (2006).

At the start of voir dire, the trial court informed the members of the venire that if their silence was misleading, they had to speak up. After the six venire members said they would not follow the law, they did not speak up when asked if they would require the State to prove every element, as illustrated in the following exchange between defense counsel and the venire:

> [DEFENSE COUNSEL]: Beyond a reasonable doubt. So, if they prove—if at the close of the evidence, you say on one of the

elements, I don't care which one or all of them, he didn't do it, what's your verdict?

VENIRE WOMAN: Not guilty.

[DEFENSE COUNSEL]: I know you're tired, folks.

(Venire members respond, "Not guilty.")

. . .

[DEFENSE COUNSEL]: Can you follow the law and make them prove each and every element beyond a reasonable doubt?

(Venire members respond, "Yes.")

[DEFENSE COUNSEL]: If you're acting reasonable and find any doubt, you'll find him not guilty, even though you have to go home to your wife or husband and say, you know what, I had this case, I was pretty sure he did it, but I found him not guilty because I had to under the law. Can you do that?

(Venire members respond, "Yes.")

[DEFENSE COUNSEL]: Okay, Thank you, ma'am. Anybody else? Raise your hand if you cannot do that. If you can't, that's okay. Go ahead. If you can't follow the law in that respect.

(No response.)

[DEFENSE COUNSEL]: Or you can. It doesn't matter to me one way or another, you just got to be honest. Okay. That's okay. Everybody in the center, in the center, can you follow the law in that respect and make them prove each and every element beyond a reasonable doubt? And if you have a doubt and you're not sure he did it and you're like, man, I'm not sure about that element, I have a doubt about that element, can you find him not guilty and follow the law even though you're pretty sure he did it?

(Venire members respond, "Yes.")

[DEFENSE COUNSEL]: Can everybody do that in this center section?

9

(Venire members respond, "Yes.")

[DEFENSE COUNSEL]: Yes? Can everybody in this section? You won't lower the burden? You won't make it, well, I'm pretty sure he did it? You won't lower it. Everybody can follow the law, right? Really? You can? Okay. Thank you, ma'am. Anyone else?

(No response.)

[DEFENSE COUNSEL]: Anyone else? Because once you're over there, it's too late. If you can't do it, fine. You just got to tell me.

(No response.)

We agree with the State that the venire members effectively gave contradictory answers. Therefore, according deference to the trial court's decision, we conclude the trial court did not abuse its discretion. *See Leadon v. State*, 332 S.W.3d 600, 616 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Most of those who, during the State's voir dire examination, originally indicated that they could not consider a life sentence were rehabilitated by remaining silent and not affirmatively stating that they wished to keep their previous response."); *Russeau*, 171 S.W.3d at 879; *Cubit v. State*, No. 03-99-00342-CR, 2000 WL 373821, at *1 (Tex. App.—Austin April 13, 2000, no pet.) (not designated for publication) (stating that by remaining silent when asked to respond if they would consider race, panelists answered they would not). We overrule Appellant's third issue.

## Appellant's Objection to the Charge

In his fourth point, Appellant contends the trial court erred by denying his objection to the jury charge for failing to allege an offense, arguing that causing serious bodily injury, standing alone, is not sufficient to constitute the offense under the cruelty-to-animals statute. Appellant argues the causing of serious bodily injury must be coupled with a "cruel manner." *See* Tex. Penal Code Ann. § 42.092(b). Appellant objected and requested that the "cruel manner" language be added to the serious-bodily-injury portion of the charging paragraph. The trial court denied Appellant's request. Appellant contends the jury could have convicted him for causing bodily injury without proof of a cruel manner, which is not an offense.

In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "A jury charge that tracks the language of a particular statute is a proper charge on the statutory issue." *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1068 (1995). The statute provides, "A person commits an offense if the person intentionally, knowingly, or recklessly: (1) tortures an animal or in a cruel manner kills or causes serious bodily injury to an animal." Tex. Penal Code Ann. 42.092(b)(1). The jury charge provided:

> Now, if you find from the evidence beyond a reasonable doubt
> that on or about the 13th day of May, 2011, in Tarrant County,
> Texas, the defendant, [Appellant], did then and there intentionally or

11

knowingly torture or in a cruel manner kill or cause serious bodily injury to an animal, to-wit:  a dog, by hitting the dog with a broom or broomstick,

Or, if you find from the evidence beyond a reasonable doubt that on or about the 13th day of May, 2011, in Tarrant County, Texas, the defendant, [Appellant], did then and there recklessly, to-wit:  by hitting the dog with a broom or broomstick, torture or in a cruel manner kill or cause serious bodily injury to an animal, to-wit: a dog, by hitting the dog with a broom or broomstick, then you will find the Defendant guilty of the offense of cruelty to animals as charged in the indictment.

Because the jury charge tracked the statutory language, the trial court did not err. *See Riddle*, 888 S.W.2d at 8.  We overrule Appellant's fourth point.

### Denial of Appellant's Motion to Suppress

In his fifth point, Appellant contends the trial court abused its discretion by denying his motion to suppress the dog necropsy.  Appellant argues a search warrant was required before a necropsy could be performed.  Appellant states that dogs are property and that under the provisions of the Texas Health and Safety Code, dogs cannot be seized as property unless a probable cause warrant for seizure is first obtained.  Tex. Health & Safety Code Ann. § 821.022 (West 2010); *see Thomas v. State*, 352 S.W.3d 95, 104 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Chambers v. State*, 261 S.W.3d 755, 759 (Tex. App.—Dallas 2008, pet. denied).

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Dogs are classified as ordinary property. *Strickland v. Medlen*, 397 S.W.3d 184, 198 (Tex. 2013). Abandonment of property occurs if (1) the defendant intended to abandon the property and (2) his decision to abandon the property was not due to police misconduct. *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App.), *cert. denied*, 522 U.S. 844 (1997); *Brimage v. State*, 918 S.W.2d 466, 507 (Tex. Crim. App. 1994), *cert. denied*, 519 U.S. 838 (1996). Abandonment is primarily a question of intent to be inferred from words spoken, acts done, and other objective facts and relevant circumstances. *McDuff*, 939 S.W.2d at 616. The issue is not abandonment in the strict property-right sense, but rather whether the accused had voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *Id.* Additionally, when a defendant abandons property, he lacks standing to contest the reasonableness of the search of the abandoned property. *Id.* We can sustain a trial court's denial on the ground that the evidence failed to

establish standing as a matter of law even when the record does not show the issue was ever considered by the parties or the trial court. *Id.*

In *McDuff*, the defendant was seen, using another car, pushing his car into a motel parking lot, where it remained for six days before the police towed it away. *Id.* The police thereafter searched the car three times and recovered papers bearing the defendant's name, hair that was eventually determined to be similar to the victim's, and blood spots in the carpeting. *Id.* The State argued the defendant had abandoned the car and had forsaken any reasonable expectation of privacy in it, and the court agreed. *Id.* at 616–17. In support of its holding that the defendant had abandoned the car, the court stated that the defendant had pushed the car into the motel parking lot without any police involvement, the defendant was in possession of another vehicle, and the defendant was found approximately two months later in another state living under other names. *Id.*

Appellant relinquished Zoe's body to the veterinarian and requested a communal cremation. In communal cremations, the ashes are commingled with those of other animals and are not returned to the owner, unlike in a private cremation where the dog's ashes are returned to the owner. Because Appellant had no intention of reclaiming Zoe's body or her ashes, we hold that Appellant voluntarily discarded, left behind, and otherwise relinquished his interest in them such that he could no longer retain a reasonable expectation of privacy and, therefore, that he lacked standing to contest the reasonableness of any search. *See id.* at 616. The Metro West Veterinary Emergency Center made the decision

14

to send Zoe's body for a necropsy. The veterinarian who performed the necropsy produced his records only after being subpoenaed. Because there is no evidence suggesting the police were in any way involved in Appellant's decision to abandon Zoe's body, we further hold that it was not due to police misconduct. *Id.* We overrule Appellant's fifth point.

## Conclusion

Having overruled all of Appellant's points, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED: July 2, 2015

15